**Christopher Shane GRAY, Petitioner,**

**v.**

**The DISTRICT COURT OF the ELEVENTH JUDICIAL DISTRICT, and the Honorable John E. Anderson, III, one of the judges thereof, Respondents.**

No. 94SA109.

Supreme Court of Colorado,
En Banc.

Oct. 11, 1994.

Rehearing Denied Nov. 29, 1994.

David F. Vela, State Public Defender, Natalie Frei, Robin Desmond, Deputy State Public Defenders, Denver, for petitioner.

John E. Anderson, III, Dist. Judge, Cañon City, for respondents.

Edward J. Rodgers, Dist. Atty., Eleventh Judicial Dist., Cañon City, for amicus curiae Dist. Atty., Eleventh Judicial Dist.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., Thomas S. Parchman, Asst. Atty. Gen., Human Resources Section, Denver, for amicus curiae the State of Colorado.

Colorado Dist. Attys. Council, Raymond T. Slaughter, Executive Director, Katherine M. Clark, Staff Atty., Denver, for amicus curiae Colorado Dist. Attys. Council.

Law Office of Stanley H. Marks & Richard A. Hostetler, Richard A. Hostetler, Denver, for amicus curiae Colorado Crim. Defense Bar.

Justice VOLLACK delivered the Opinion of the Court.

■ In this original proceeding pursuant to C.A.R. 21, we issued a rule directing the respondent, the Fremont County District Court, to show cause why it should not be prohibited from requiring petitioner, Christopher Shane Gray (Gray), to disclose to the prosecution psychiatric and psychological examinations and records produced in the course of treatment which occurred prior to the offense at issue.[1] We issued a rule to show cause and now discharge the rule.

### I.

Gray is charged with one count of criminal attempt to commit murder in the first degree pursuant to sections 18–2–101 and 18–3–102, 8B C.R.S. (1986), one count of first-degree burglary pursuant to section 18–4–202, 8B C.R.S. (1986), one count of theft pursuant to section 18–4–401, 8B C.R.S. (1986), one count of second-degree kidnapping pursuant to section 18–3–302, 8B C.R.S. (1986), one count of aggravated intimidation of a witness or victim pursuant to section 18–8–705(1)(b), 8B C.R.S. (1986), one count of first-degree assault pursuant to section 18–3–202, 8B C.R.S. (1986), one count of second-degree burglary pursuant to section 18–4–203, 8B C.R.S.

(1986), one count of first-degree trespass pursuant to section 18–4–502, 8B C.R.S. (1986), and five counts of violent crime pursuant to section 16–11–309, 8A C.R.S. (1986).

On November 17, 1993, Gray entered a plea of not guilty by reason of insanity and asserted the affirmative defense of impaired mental condition. He also filed a motion to suppress medical records of his psychiatric hospitalization in 1990, when at such time, he was evaluated and treated for mental health problems. Approximately six weeks later, Gray filed a motion for a constitutional interpretation of section 16–8–103.6, 8A C.R.S. (1994 Supp.).

At the hearing on the motion requesting a constitutional interpretation of section 16–8–103.6, the prosecuting attorney asserted that, pursuant to section 16–8–103.6, the prosecution is entitled to any records of any examinations ever performed on Gray in his lifetime that may deal with any psychological condition which might support a plea of not guilty by reason of insanity or not guilty by reason of impaired mental condition. Conversely, Gray contended that such an interpretation violates his right to effective assistance of counsel.

The district court denied Gray's motion to suppress the medical records regarding his 1990 psychiatric hospitalization. The district court ruled that the physician/psychologist-patient and attorney-client privileges do not apply to psychiatric and psychological examinations conducted before the date of the offenses in question, regardless of whether the defense intends to call a defense-retained psychiatrist as an expert witness. The district court additionally ruled that section 16–8–103.6 does not violate Gray's Sixth Amendment right to effective assistance of counsel. The district court later supplemented its order and ruled that, because Gray had placed his mental condition at issue by pleading not guilty by reason of insanity and by asserting the affirmative defense of impaired mental

---

1. This court has original jurisdiction to issue a writ of mandamus or prohibition "where the district court is proceeding without or in excess of its jurisdiction," C.A.R. 21, and "where the trial court has abused its discretion and where an appellate remedy would not be adequate."

*Halaby, McCrea & Cross v. Hoffman,* 831 P.2d 902, 905 (Colo.1992); *see also People v. District Court,* 790 P.2d 332, 334–35 (Colo.1990); *White v. District Court,* 695 P.2d 1133, 1135 (Colo. 1984).

condition, he had impliedly waived his right to assert any privilege.

Gray thereafter filed a petition for relief in the nature of a writ of prohibition pursuant to C.A.R. 21, and a request to stay proceedings pending resolution of this petition. We ordered the district court[2] to show cause why the relief requested in the defendant's petition should not be granted.

We now conclude that the admission of hospital records and psychiatric testimony neither violates the attorney-client privilege nor deprives the defendant of his constitutional right to effective assistance of counsel.

## II.

### SCOPE OF THE ATTORNEY–CLIENT PRIVILEGE

■ Gray argues that the attorney-client privilege under section 13–90–107(1), 6A C.R.S. (1987), applies to communications between a defendant and the physician or psychologist who is evaluating the defendant's mental condition at the request of the defense. Gray relies on two cases—*Miller v. District Court*, 737 P.2d 834 (Colo.1987), and the dissent in *People v. Fuller*, 791 P.2d 702 (Colo.1990)—to support his contention. Gray further contends that this court should narrowly construe section 16–8–103.6 and requests this court to interpret the statute consistently with the dissenting opinion in *People v. Fuller*. Gray additionally contends that his insanity or impaired mental condition defense does not create a waiver of the communication protection afforded under the attorney-client privilege.

In reexamining *Miller* and *Fuller*, we note that *Miller* was decided at the same time the legislature was enacting sections 13–90–107(3), 6A C.R.S. (1987), and 16–8–103.6, 8A C.R.S. (1994 Supp.). In *Miller*, we recognized that the attorney-client privilege extends to communications between the client and agents of the attorney and held that a

defendant's disclosures to a psychiatrist retained by defense counsel to perform a mental status evaluation of the defendant's condition, but whom the defense did not intend to call as a witness at trial, were protected. *Miller*, 737 P.2d at 838. This holding was based on the fact that the psychiatrist is an agent of defense counsel for purposes of the attorney-client privilege. We additionally found that the defendant's assertion of an impaired mental condition defense did not create an implied waiver of his right to assert the attorney-client privilege as to disclosures made to a defense-retained psychiatrist since to hold otherwise would compromise a defendant's ability to communicate freely and confidentially with a psychiatrist retained to assist the defense. We therefore concluded that, absent a waiver of the privilege, the psychiatrist could not be forced to reveal disclosures made to him by the defendant.

In *People v. Fuller*, 791 P.2d 702 (Colo. 1990), the defendant claimed that section 16–8–103.6, 8A C.R.S. (1989 Supp.), violated his right to effective assistance of counsel because the language of the statute created uncertainty as to whether statements made by a defendant during the course of a medical examination by a defense-retained psychiatrist would have to be disclosed to the prosecution. Fuller argued that the uncertainty of the statute, coupled with the trial court's refusal to rule on the issue, hampered defense counsel's investigation concerning Fuller's mental condition and therefore violated his constitutional right to effective assistance of counsel. Because Fuller did not raise an impaired mental condition defense subsequent to the denial of his challenge of the constitutionality of the statute, a majority of this court found that Fuller lacked standing to challenge the constitutionality of the statute on appeal.

Three justices dissented and, in analyzing the language of section 16–8–103.6, determined that section 16–8–103.6 implied a waiver of the defendant's claim to confidentiality

---

**2.** The petition names as respondents in this case "The District Court of the Eleventh Judicial District, and the Honorable John E. Anderson III, one of the judges thereof." We refer to the respondents collectively as "Fremont County District Court" or "district court." Amici curiae briefs in support of respondents, opposing the relief sought by Gray, were filed by the District Attorney for the Eleventh Judicial District, the State of Colorado (through the Colorado Attorney General), and the Colorado District Attorneys Council.

arising from communications with a physician or psychologist during court-ordered examinations in preparation for trial. The dissent concluded that such an interpretation would violate a defendant's Sixth Amendment right to counsel based on *Miller* and *Hutchinson v. People*, 742 P.2d 875 (Colo. 1987). *Fuller*, 791 P.2d at 711–12.

The common law attorney-client, physician/psychologist-patient privileges have been codified in Colorado by section 13–90–107(1), 6A C.R.S. (1987). This statute defines these privileges and delineates their scope, as follows:

(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

. . . .

(d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. . . .

. . . .

(g) A licensed psychologist shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment. . . .

■ The purpose of the attorney-client privilege is to promote candid and open discussion between the client and the attorney. The attorney-client privilege applies only to confidential communications by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *Lanari v. People*, 827 P.2d 495, 499 (Colo.1992).

In 1987, the legislature enacted section 13–90–107(3): [3]

The provisions of paragraphs (d) [physician privilege] and (g) [psychologist privilege] of subsection (1) of this section shall not apply to physicians or psychologists eligible to testify concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S. Physicians and psychologists testifying concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S. do not fall under the attorney-client privilege in paragraph (b) of subsection (1) of this section.

Section 13–90–107(3) [4] applies to physicians or psychologists eligible to testify concerning a criminal defendant's mental condition pursuant to 16–8–103.6 and does not limit the time frame for the medical examination. Section 16–8–103.6, 8A C.R.S. (1994 Supp.), states in pertinent part:

**Waiver of Privilege:** A defendant who places his mental condition at issue by pleading not guilty by reason of insanity pursuant to section 16–8–103, asserting the affirmative defense of impaired mental condition pursuant to section 16–8–103.5, . . . waives any claim of confidentiality or privilege as to communications made by him to a physician or psychologist in the course of examination or treatment for such mental condition for the purpose of any trial or hearing on the issue of such mental condition. The court shall order both the prosecutor and the defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who has examined or treated the defendant for such mental condition.

Our analysis of this case is not governed by our decision in *Miller* since *Miller* was based on the statutory attorney-client privilege which, after *Miller* was decided, was amended. We therefore find *Miller* neither

---

**3.** Act approved May 16, 1987, ch. 119, sec. 5, 1987 Colo.Sess.Laws 623.

**4.** The statutory scheme contemplates that a psychiatric or psychological examination of a defendant by a defense-retained psychiatrist, acting as an agent of defense counsel, does not fall under the umbrella of the attorney-client privilege.

controlling authority on the issue of the attorney-client privilege nor persuasive in interpreting Colorado's revised attorney-client privilege statute.

We now review the legislative history of section 16–8–103.6, which reveals that the statute is intended to provide for broad disclosure. House Bill 87–1233 was introduced in the 1987 legislature,[5] and hearings were held concerning it by a subcommittee of the Senate Judiciary Committee. In the Senate Committee on Judiciary Hearings, Deputy District Attorney Dan May, from the Fourth Judicial District, testified about the purpose of the statutory changes.

> [W]hat our Bill needs to do is say, listen[,] if you want to plead insanity, fine.... Let's find out what the truth is. Let's see all these doctors' reports.... What we're trying to prevent is to allow the defendant to manipulate the system....
>
> ....
>
> ... What this is is really just to get at the truth.... [If a defendant asserts an insanity defense,] then [the defendant] open[s] the door. If [the defendant] want[s] to use [the insanity defense] as a benefit to [him,] then we say, OK, let's see if that's the truth or at least get all the information that there is on it. It opens

the door in the impaired mental condition, in the insanity and in the competency [proceeding]....

> ....
>
> ... [Section] 13–90–107[:] This is a privilege statute ... [;] all [it does] is ma[k]e it clear ... that if they want to plead insanity, impaired mental condition[,] or incompetency [the] psychiatrist or psychologist or physician is not bound by the confidentiality....

■ A plain reading of sections 13–90–107(3) and 16–8–103.6 demonstrates that the statutory attorney-client privilege does not extend to communications made to physicians or psychologists who are eligible to testify concerning a criminal defendant's mental condition once that mental condition has been asserted as a plea or defense. We therefore hold that Gray's medical records of psychiatric evaluations and treatments are not within the ambit of the attorney-client privilege.[6] Our holding is consistent with public policy considerations which weigh heavily in favor of the disclosure of Gray's medical records. The fundamental purpose of a criminal trial is the fair ascertainment of the truth, and the trier of fact should not be deprived of valuable evidence or witnesses.[7]

---

**5.** Act approved May 16, 1987, ch. 119, sec. 1, 1987 Colo.Sess.Laws 622.

**6.** Section 27–10–120, 11B C.R.S. (1989), additionally supports our determination that the prosecution is entitled to Gray's 1990 psychiatric hospitalization records. Section 27–10–120 provides:

> Records....
> (2)(a) Nothing in this article shall be construed as rendering privileged or confidential any information (except written medical records and information which is privileged under section 13–90–107, C.R.S.) concerning observed behavior which constitutes a criminal offense committed upon the premises of any facility providing services under this article or any criminal offense committed against any person while performing or receiving services under this article.
> (b) The provisions of subsection (1) of this section shall not apply to physicians or psychologists eligible to testify concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S.

**7.** In *State v. Pawlyk*, 115 Wash.2d 457, 800 P.2d 338 (1990), the court reaffirmed its holding in *State v. Bonds*, 98 Wash.2d 1, 653 P.2d 1024

(1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983), that, where the defendant raises an insanity defense, the testimony of the defense's psychiatric expert is not protected under the attorney-client privilege. In *Bonds*, the court determined that the public interest in disclosure outweighs the privilege and found convincing the reasoning in Stephen A. Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists*, 66 Va.L.Rev. 597, 635–42 (1980), where the author argues

> that the defense psychiatrist's examination of defendant is likely to be more accurate on the issue of insanity than that of the prosecution's. The defense psychiatrist will generally examine defendant earlier than the prosecution. The examination will thus be closer to the time of the offense, when defendant's recollections are clearer and there is less likelihood that defendant's mental condition has changed. Moreover, a defendant might benefit by undergoing several psychiatric examinations, examining reports of psychiatrists unfavorable to his insanity defense, and tailoring his responses in subsequent examinations more favorably to his defense. Defendant is also likely to be more cooperative with his own psychiatrist and give

## III.

## WAIVER

■ We next address Gray's argument that by pleading not guilty by reason of insanity or by asserting impaired mental condition, he waived neither the attorney-client nor the physician/psychologist-patient privilege.

In its order, which interpreted section 16–8–103.6, the district court stated:

The assertion in the *Fuller* dissent that the legislature intended waiver to be limited to examinations under subsection [16–8–]103.5(4) is not supportable on any basis. The examination to be undertaken under that subsection is ordered by the court pursuant to section 16–8–106. So it must be asked ... whether any defendant has successfully asserted a privilege with regard to section [16–8–]106 examinations, other than the privilege against self-incrimination set forth in subsection [16–8–]106(2). And since the answer is no, it seems highly unlikely that the legislative purpose in enacting section [16–8–]103.6 was to provide for waiver of a privilege which has never existed.

. . . .

Under section [16–8–]103.6 those eligible to testify are any physicians or psychologists who have examined or treated the defendant *post-offense for the mental condition at issue. . . . There is no language of limitation excluding defense physicians or psychologists.*

... [A]s the legislature has provided at section [16–8–]103.6, waiver of privilege or confidentiality occurs when the defendant places his mental condition at issue.

a more accurate impression of his mental condition. Saltzburg argues, and we agree, that for these reasons all available evidence of defendant's mental condition should be put before the jury.

*Pawlyk*, 800 P.2d at 341 (quoting *Bonds*, 653 P.2d at 1035).

We find persuasive Saltzburg's discussion of why full disclosure outweighs the benefits of the attorney-client privilege.

8. Gray maintains that the trial court's reasoning is faulty and that the trial court misapplied *Clark*. *Clark* states:

Waiver ... extends not only to the physician and psychologist privilege, but to the attorney-client privilege as well. See added subsection 13–90–107(3).

(Emphasis added.)

In its order addressing Gray's motion to suppress his 1990 hospital records, the district court ruled:

[T]he prosecutor seeks to have the [District] Court extend the waiver of section 16–8–103.6 to otherwise privileged communication made even prior to the date of offense.... [T]he Court remains unconvinced that the legislature necessarily intended section 16–8–103.6 to apply to communications *prior to the date of [the] offense....*

Nonetheless, since this Defendant has placed his mental condition at issue both by virtue of his plea of not guilty by reason of insanity and by giving notice of the affirmative defense of impaired mental condition, there is an implied waiver with regard to the Charter Hospital records. *See Clark[ v. District Court]*, [668 P.2d 3 (Colo.1983) ].[8]

(Emphasis added.)

Section 16–8–103.6, 8A C.R.S. (1994 Supp.), states in pertinent part:

**Waiver of Privilege.** A defendant who places his mental condition at issue by pleading not guilty by reason of insanity pursuant to section 16–8–103, asserting the affirmative defense of impaired mental condition pursuant to section 16–8–103.5, ... waives any claim of confidentiality or privilege as to communications made by him to a physician or psychologist in the course of an examination or treatment for such mental condition for the purpose of

When the privilege holder pleads a physical or mental condition as the basis of a claim or as an affirmative defense, the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition. The privilege holder under these circumstances has utilized his physical or mental condition as the predicate for some form of judicial relief, and his legal position as to that condition is irreconcilable with a claim of confidentiality....

*Clark*, 668 P.2d at 10.

any trial or hearing on the issue of such mental condition. The court shall order both the prosecutor and the defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who has examined or treated the defendant for such mental condition.

Based on a plain reading of the statute, section 16–8–103.6 indicates that the legislature has created a *statutory* waiver to *any* claim of confidentiality or privilege, which includes the attorney-client and physician/psychologist-patient privileges. The defendant waives the protection to communications, including medical records, that pre-date and post-date the criminal offense, made by a defendant to a physician or psychologist in the course of examination or treatment. We conclude that, where a defendant tenders his or her mental condition as an issue in the trial, the defendant waives the right to claim the attorney-client and physician/psychologist-patient privileges, and a prosecution's use of testimony of a defense-retained psychiatrist, who is not called by the defendant to testify at trial, is admissible at trial.

The legislative history of and intent behind section 16–8–103.6 lend further support for our holding. The bill's sponsor, Representative Phillips, in presenting her bill to the House Committee on Judiciary, explained the purpose and effect of House Bill 87–1233:

> [T]he bill is a matter of opening all evidence to a jury in criminal insanity cases.... [T]he Colorado Supreme Court has twice ruled that a party does not waive a claim of confidentiality when that party places his mental condition at issue in

criminal cases.... House Bill 1233 would "waive claims of confidentiality in such cases."

In the Senate Committee on Judiciary hearings, Senator Donley initially moved to amend the bill by adding a new statutory section, section 16–8–103.7, which would have provided that the waiver of the attorney-client privilege only extends to communications between a physician or psychiatrist and his patient which occurred less than two years prior to the commission of the crime. Senator Donley withdrew his proposed amendment to restrict the time period for applying the waiver after discussion by the committee, in which it was explained that the waiver only relates to the mental condition that is being used as a defense. The testimony demonstrates that the legislature intended for the waiver of privilege under section 16–8–103.6 to apply to medical or mental health records that may have even pre-dated the criminal offense.[9]

The legislative history demonstrates that the legislature intended to allow for full disclosure of medical and mental health records concerning the mental condition that the defendant has placed in issue in a criminal case. We therefore hold that, where a defendant tenders a plea of not guilty by reason of insanity or asserts the affirmative defense of impaired mental condition, the defendant waives his right to claim the attorney-client and physician/psychologist-patient privileges pursuant to section 16–8–103.6, and consents to disclosure of pre- or post-offense information concerning the defendant's medical condition.[10]

---

**9.** For example, Deputy District Attorney May testified:

> [Y]ou're looking at who probably has the best knowledge of this particular person.... It is not unusual to confide in [a doctor whom you have seen] for many years prior to doing the crime. [This doctor] probably ha[s] the [most reliable] information of whether [the defendant] ... is insane or not. So that's why we didn't put [a] time limit in because we would want to know what that [doctor] has to say as to whether [the defendant] is insane because [that doctor] would probably has the best grasp of whether [the defendant] is [insane]....

**10.** The issue of whether the attorney-client privilege should apply to exclude testimony of a defense psychiatrist who is not called by the de-

fense but is called by the prosecution to rebut the defense of mental illness has been considered by a number of state and federal courts in factual situations which are precisely or closely analogous to the situation presented in the present case. We are aware that many courts have held that, when a defendant enters an insanity defense and intends to call psychiatrists to testify as to that issue, the defendant waives the attorney-client privilege and the privilege does not extend to nontestifying defense-retained psychiatrists. *See Noggle v. Marshall*, 706 F.2d 1408 (6th Cir. 1983) (holding that a guarantee of effective counsel does not insulate from disclosure, on the issue of defendant's sanity, the opinion of a medical expert who was retained by the defense as a potential witness); *see also Haynes v. State*, 103

## IV.

## RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

■ Gray next maintains that section 16–8–103.6's requirement of the disclosure of defendant's medical examinations by defense-retained psychiatric experts, when the defense does not intend to call the witness or to use the material at trial, infringes on Gray's Sixth Amendment and state constitutional right to counsel. The district court maintains that allowing the prosecution to discover and use a defense-retained expert whom the defense does not intend to call as a witness does not violate a defendant's constitutional right to effective assistance of counsel.

■ The right to counsel established by the Sixth Amendment to the United States Constitution and Article II, Section 16, of the Colorado Constitution includes the right to effective assistance of counsel in the preparation of a case. *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court stated that the "[g]overnment violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686, 104 S.Ct. at 2063. Similarly, the Court

has considered direct state interferences with counsel's decision-making process to be a Sixth Amendment violation. *See, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (holding that court denied defendant effective assistance by preventing defense counsel and defendant from consulting during overnight recess); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (holding that court violated Sixth Amendment by denying defense right to summation at bench trial); *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (holding that ban on direct examination of the defendant violated the Sixth Amendment).

In *Buchanan v. Kentucky,* 483 U.S. 402, 422–23, 107 S.Ct. 2906, 2917–18, 97 L.Ed.2d 336 (1987), the prosecution used a report of a defense-retained psychiatrist to rebut the mental status defense of the defendant where the defendant did not testify at trial. The court rejected the defendant's claim that the use of the report infringed upon his Sixth Amendment rights, noting that the defendant misconceives the nature of the Sixth Amendment right. *Id.* at 424, 107 S.Ct. at 2918–19. However, the Supreme Court has not considered whether a state's statute which indirectly *may* affect defense counsel's judgment also violates the Constitution.

In its order, the trial court stated:

Nev. 309, 739 P.2d 497 (1987); *State v. Craney,* 347 N.W.2d 668 (Iowa), *cert. denied,* 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984); *State v. Carter,* 641 S.W.2d 54 (Mo.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); *People v. Edney,* 39 N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976).

In *State v. Carter,* 641 S.W.2d 54 (Mo.1982), the Supreme Court of Missouri concluded that the attorney-client privilege does not apply to communications between a client and a defense-retained psychiatrist in an effort to obtain a favorable opinion supporting the defendant's defense of mental disease or defect. The court stated that, had the testimony satisfied the privilege, the defendant, in any event, waived any right to assert any claim of attorney-client or physician-patient privilege by interposing the defense of insanity.

The New York Court of Appeals in *People v. Edney,* 39 N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976), held that, where the defense of insanity was asserted and the defendant offered evidence to establish the claim, a waiver of privilege was effected. Under such circum-

stances, it concluded, the prosecution is permitted to use a psychiatric expert, who had examined the defendant at his attorney's request, as a witness in rebuttal to another psychiatric witness presented by the defense. The court persuasively presented the waiver rationale:

"When the patient first fully discloses the evidence of his affliction, it is he who has given the public the full details of his case, thereby disclosing the secrets which the statute was designed to protect, thus creating a waiver removing it from the operation of the statute; and once the privilege is thus waived, there is nothing left to protect against for once the revelation is made by the patient there is nothing further to disclose 'for when a secret is out[,] it is out for all time[,] and cannot be caught again like a bird, and put back in its cage.... The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice.'"

*Id.* at 25, 350 N.E.2d at 402 (quoting *People v. Al-Kanani,* 33 N.Y.2d 260, 351 N.Y.S.2d 969, 307 N.E.2d 43 (1973)) (citations omitted).

If we examine all the legitimate needs of a defendant and his counsel to effective use of expert witnesses as discussed in *Hutchinson,* there are none that are unduly intruded upon by section [16–8–]103.6 because there exist the substantial protections afforded by subsection [16–8–]107(1).

If, on the other hand, we yield to an absolutist approach and allow not even of a need for improvement in this area, we irrefutably and unnecessarily subjugate the truth seeking process.

It is the opinion of this Court that the statutory scheme now in place does not itself jeopardize a defendant's right to effective assistance of counsel. And claims of ineffective assistance of counsel should ordinarily focus on the facts of individual cases.

In *Hutchinson v. People,* 742 P.2d 875 (Colo.1987), this court assessed whether the use of a defense-retained handwriting expert, whom the defense did not intend to call as an expert to testify at trial and whom the prosecution wanted to call as a witness, violated a defendant's right to effective assistance of counsel. We held that the prosecution's use of a defense-retained handwriting expert during its case-in-chief, absent a waiver or compelling circumstances, conflicts with the meaningful exchange guaranteed by the Sixth Amendment and Article II, Section 16, of the Colorado Constitution. *Id.* at 880. This conclusion was based on the analysis that a defense expert may be needed as a defense witness or to rebut a case built upon the "powerful investigative arsenal" of the state. "Consequently, the prosecution should not be permitted to intrude upon this relationship as a matter of course and convert a defense expert into a potential witness-in-chief against the defendant. We can imagine few intrusions more disruptive to the efforts of defense counsel." *Id.* at 882.

*Hutchinson,* however, is not dispositive of the right to effective assistance of counsel issue before the court in this case since the defense expert in *Hutchinson* was offered on the issue of the defendant's guilt, and not on the limited issue of insanity or impaired mental condition. Further, policy considerations dictate full disclosure of mental evaluations performed by psychiatrists originally retained by the defense where a defendant asserts a mental status defense, since, unlike a trial to establish guilt, a defendant is the sole source of evidence concerning his mental condition. The state therefore has a significant interest in obtaining access to these psychiatric evaluations. *Lange v. Young,* 869 F.2d 1008, 1013 (7th Cir.1989), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1990).

In resolving the question presented, we find instructive cases in other jurisdictions where the criminal defendant presents an insanity defense at trial and advances a claim that the defendant's Sixth Amendment rights were implicated. Many courts have found that statutory schemes similar to Colorado's do not violate a defendant's Sixth Amendment rights. The majority of courts that have reviewed this issue have found that, where the mental state of an accused is an issue in a criminal case, it is " 'in the interest of public justice' for the trial court to permit both the Government and the defendant full access to the reports and conclusions" of physicians and psychologists who have evaluated the mental state of the defendant, and such access does not interfere with the defendant's Sixth Amendment guarantees. *United States v. Carr,* 437 F.2d 662, 663 (D.C.Cir.1970), *cert. denied,* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971); *see also Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.) (finding that attorney-psychiatrist-client privilege is not mandated by effective counsel requirements), *cert. denied,* 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.1981) (concluding that admission of psychiatric testimony neither violated the attorney-client privilege nor deprived the defendant of his Sixth Amendment right to effective assistance of counsel), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *State v. Pawlyk,* 115 Wash.2d 457, 800 P.2d 338 (1990) (holding that there was no violation of right to counsel where the defendant, who asserted an insanity defense, was ordered to disclose statements he made to a defense-retained psychiatrist not endorsed by the defense as a witness. The court stated that,

"[i]f [a] defendant asserts an insanity defense, evidence pertaining to that defense must be available to both sides at trial."); *State v. Craney*, 347 N.W.2d 668 (Iowa) (holding that admission of psychiatric expert's testimony that included expert's opinion on defendant's sanity and diminished capacity, and expert's nonincriminatory observations of the defendant, was proper and did not create a Sixth Amendment violation), *cert. denied*, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984); *State v. Dodis*, 314 N.W.2d 233 (Minn.1982) (concluding that, where defendant raised a mental illness defense, a defense-retained expert, who had not been called by the defense to testify at trial, could be called as a witness by the prosecution during the mental illness portion of a trial and this procedure is consistent with the attorney-client privilege and constitutional rights to effective counsel).

In *Lange v. Young*, 869 F.2d 1008 (7th Cir.1989), the Seventh Circuit ruled that as a matter of state law the scope of the attorney client privilege—which allowed a psychiatrist who interviewed the defendant, but whom had not been called as a defense witness, to be called by the state to testify on the issue of defendant's insanity—does not violate the defendant's Sixth Amendment rights.

> Unlike a trial to determine guilt, in which the state must assemble its evidence apart from any contact with the defendant, the defendant is the sole source of evidence in a trial to determine sanity. The defendant thus has the opportunity to manipulate the information the state receives. The state's ability to call a defense psychiatrist equalizes the advantage reaped by a defendant who asserts the insanity defense.

*Id.* at 1013.

. Additionally, in *State v. Carter*, 641 S.W.2d 54 (Mo.1982), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983), the court held that the defendant was not deprived of his constitutional right to effective assistance of counsel. In reaching this conclusion, the court recognized:

> The fact that [the defendant] in preparing [his] defense ... could ... choose a psychiatrist who might make a report adverse to defense counsel's theory of [the] de-

fense, or that in a psychiatric examination a defendant might speak guardedly or be less than candid with the doctor, knowing that the doctor might turn out to be a witness against him[,] are not considerations of sufficient importance in this case to outweigh and override the stated requirements of fairness, justice and public policy.

*Id.* at 59.

To deny the prosecution the ability to use such a defense expert simply because the defense does not wish to call the witness would interfere with the truth-seeking process inherent in a criminal trial. Further, any risk of prejudice to the defendant can be diminished by not informing the jury that the expert was originally employed by the defendant. *See State v. Schneider*, 402 N.W.2d 779, 788 (Minn.1987) ("Experts are not the paid harlots of either side in a criminal case and should not be portrayed in such a light."); *People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208, 221 (1968) ("A witness is not the property of either party to a suit and simply because one party may have conferred with a witness and even paid him for his expert advice does not render him incompetent to testify for the other party."), *rev'd in part*, 403 U.S. 946, 91 S.Ct. 2279, 29 L.Ed.2d 855 (1971).

A defendant's mental state at the time of the commission of the crime is at issue in a defendant's sanity or impaired mental condition case. Where the defendant asserts a mental defense, each party has a definite interest in finding out the truth concerning the defendant's mental state at the time the crime was committed. To ascertain the truth, both prosecution and defense counsel need full access to reports concerning defendant's medical history as well as a diagnostic assessment by psychiatric witnesses who treated or examined the defendant before or after the crime concerning the mental condition. Additionally, a psychiatrist who has evaluated a defendant at defense counsel's request shortly after the event may have more valuable information than a doctor who evaluates the defendant at a later time, when intervening factors may bias the defendant's initial perceptions and reactions.

We therefore conclude that the trial court's order in this case to disclose Gray's hospital records, and the Colorado statutory scheme regarding disclosures, do not violate the defendant's constitutional right to effective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution or Article II, Section 16, of the Colorado Constitution.

## V.

In summary, we conclude that the admission of hospital records and psychiatric testimony neither violates the attorney-client privilege nor deprives the defendant of his constitutional right to effective assistance of counsel. We therefore discharge the rule.

LOHR, J., concurs in part and dissents in part, and SCOTT, J., joins in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

The majority upholds an order of the trial court denying the defendant's motion to suppress records pertaining to his psychiatric evaluation and treatment prior to the occurrence of his alleged criminal acts. In addition, the majority interprets section 16–8–103.6, 8A C.R.S. (1994 Supp.), to effect a waiver of any attorney-client or physician/psychologist-patient privilege by any defendant who pleads not guilty by reason of insanity or who asserts the affirmative defense of impaired mental condition (in this dissent such a plea and affirmative defense are referred to jointly as the "mental status defense"). Thus, the majority holds that the prosecution may compel discovery of the names of all defense-retained psychiatrists and of all defense-commissioned psychiatric reports regardless of defense counsel's intention to call the examining psychiatrist to testify at trial. Also, the prosecution may use the testimony of these defense experts in its case in chief. Maj. op. at 292–293. I concur with the majority as to the denial of suppression of pre-offense psychiatric records. However, I believe that the majority's interpretation of section 16–8–103.6 violates an accused's constitutional right to effective assistance of counsel. Therefore, I dissent

regarding the disclosure of defense instituted psychiatric examinations.

## I.

### *Facts and Procedural History*

Christopher Shane Gray ("Gray") is charged with attempt to commit first degree murder, and with the additional crimes of first-degree burglary, theft, second degree kidnapping, aggravated intimidation of a witness or victim, first-degree assault, second degree burglary, first-degree trespass, and five counts of violent crime. *See* Maj. op. at 288.

On November 17, 1993, Gray entered pleas of not guilty by reason of insanity and asserted the affirmative defense of impaired mental condition. On that same day, Gray filed a motion to suppress medical records from a 1990 psychiatric hospitalization. These records were generated from examinations and treatments that occurred prior to Gray's alleged commission of the offenses at issue. On December 31, 1993, Gray filed a motion for a "constitutional interpretation" of section 16–8–103.6, 8A C.R.S. (1994 Supp.), contending that a construction of this statute that would require him to disclose information concerning examination or treatment by any physician or psychologist whom he does not intend to call at trial would violate certain of his constitutional rights.

The trial court denied Gray's motion to suppress the 1990 pre-offense psychiatric records. The trial court ruled that generally a defendant's pre-offense psychiatric records would be privileged under subsections 13–90–107(1)(d) and (g), 6A C.R.S. (1987 & 1994 Supp.) (physician/psychologist-patient privileges). The trial court held, however, that when a defendant pleads a mental status defense, the defendant implicitly waives any privilege pertaining to pre-offense psychiatric records. In ruling on the motion for a "constitutional interpretation" of section 16–8–103.6, the trial court concluded that a defendant who enters a mental status defense waives any claim of confidentiality or privilege as to communications by the defendant to any physician or psychologist who has

examined or treated the defendant post-offense for the mental condition at issue. The waiver, according to the trial court, extends not only to the physician/psychologist-patient privileges but to the attorney-client privilege as well. The trial court further held that its interpretation of section 16–8–103.6 did not contravene an accused's constitutional right to effective assistance of counsel.

Gray filed a petition for relief in the nature of a writ of prohibition pursuant to C.A.R. 21. We ordered the trial court to show cause why the relief requested in the defendant's petition should not be granted.[1] The majority now discharges the rule.

## II.

### Suppression of Pre-offense Psychiatric Reports

Suppression of pre-offense psychiatric reports is governed by the applicability of the physician-patient privilege as delineated in subsection 13–90–107(1)(d), 6A C.R.S. (1987).[2] Pre-offense psychiatric reports are not affected by the attorney-client privilege, which protects confidential communications between an attorney and a client. See § 13–90–107(1)(b), 6A C.R.S. (1987). We have held that the attorney-client privilege also applies to certain communications between clients and experts engaged by their attorneys. Hutchinson v. People, 742 P.2d 875 (Colo.1987) (handwriting expert hired by defense covered by attorney-client privilege); Miller v. District, 737 P.2d 834 (Colo.1987) (psychiatrist hired by defense counsel is an agent of defense counsel and covered by the attorney-client privilege); Bellmann v. District Court, 187 Colo. 350, 531 P.2d 632 (1975) (insurance investigator hired by insurance company defending client is covered by the attorney-client privilege). The individuals who examined Gray in 1990 were not agents of Gray's attorney. They could not be agents because the offenses with which Gray

is charged did not occur until later. Thus, the attorney-client privilege is inapplicable to the issue of whether the psychiatric reports compiled in 1990 should be suppressed.

Subsection 13–90–107(1)(d), which codifies the physician-patient privilege, states, in pertinent part:

> A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient, ...

The purpose of this privilege is to facilitate diagnosis and treatment by protecting the patient from the embarrassment and humiliation that might be caused by disclosure of confidential information. Clark v. District Court, 668 P.2d 3, 8 (Colo.1983); see, e.g., People v. Taylor, 618 P.2d 1127, 1140 (Colo. 1980); Community Hospital Association v. District Court, 194 Colo. 98, 100, 570 P.2d 243, 244 (1977). This privilege prohibits both testimonial disclosures in court and pretrial discovery of information within the scope of the privilege. Clark, 668 P.2d at 8.

The legislature limited the scope of the physician-patient privilege by enacting section 13–90–107(3), 6A C.R.S. (1987):

> The provisions of paragraphs (d) [physician privilege] and (g) [psychologist privilege] of subsection (1) of this section shall not apply to physicians or psychologists eligible to testify concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S. Physicians and psychologists testifying concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S. do not fall under the attorney-client privilege in paragraph (b) of subsection (1) of this section.

---

1. The order directed the trial court to show cause why the following relief should not be granted: "[W]hy the Fremont County District Court should not be prohibited from requiring Christopher Shane Gray to reveal the results of any confidential, privileged psychiatric examination to the prosecution and from allowing the prosecution the use of psychiatric records of Mr.

Gray which were generated from treatment occurring prior to the offenses in question."

2. My discussion addresses the physician-patient privilege; the reasoning is equally applicable to the psychologist-patient privilege codified in subsection 13–90–107(1)(g), 6A C.R.S. (1994 Supp.).

This statute limits the physician-patient privilege for any testimony covered under section 16–8–103.6, 8A C.R.S. (1994 Supp.). Section 16–8–103.6 effects a waiver of the physician-patient privilege when a defendant pleads a mental status defense. The statute states:

A defendant who places his mental condition at issue by pleading not guilty by reason of insanity pursuant to section 16–8–103, asserting the affirmative defense of impaired mental condition pursuant to section 16–8–103.5, or raising the question of incompetency to proceed pursuant to section 16–8–110 waives any claim of confidentiality or privilege as to communications made by him to a physician or psychologist in the course of an examination or treatment for such mental condition for the purpose of any trial or hearing on the issue of such mental condition. The court shall order both the prosecutor and the defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who has examined or treated the defendant for such mental condition.

The majority holds that once the defendant pleads a mental status defense, this statute requires disclosure of all medical records whether created before or after commission of the criminal offense at issue. The majority states:

Based on a plain reading of the statute, section 16–8–103.6 indicates that the legislature has created a *statutory* waiver to *any* claim of confidentiality or privilege, which includes the attorney-client and physician/psychologist-patient privileges. The defendant waives the protection to communications, including medical records, that pre-date and post-date the criminal offense, . . .

Maj. op. at 293 (emphasis in original). I have become convinced that this is the meaning of the statute notwithstanding a possible alternative reading of section 16–8–103.6 that the legislature meant to effect a statutory waiver of the privileges only for statutorily required court ordered examinations. *See* § 16–8–103.5(4), 8A C.R.S. (1994 Supp.); § 16–8–105(1), 8A C.R.S. (1986); *People v. Fuller,* 791 P.2d 702, 711 (Colo.1990) (Lohr,

J., dissenting on issue not addressed by majority).

In *People v. Fuller,* addressing in dissent the construction of section 16–8–103.6, an issue that the majority did not reach, I first noted that in interpreting statutes we should seek an interpretation that avoids constitutional defects. Although acknowledging that the statutory language seems to suggest the construction here adopted by the majority, I expressed the opinion that "[a]n interpretation of section 16–8–103.6 that would require the defendant to waive his right to confidentiality regarding conversations with a defense expert would violate the sixth amendment." *Id.; see infra,* part III. Nevertheless, I concede the force of the majority's argument; the construction it adopts reflects the true intent of the legislature.

The majority's construction is reinforced by section 16–8–108(2), 8A C.R.S. (1994 Supp.). This section requires that "[a] copy of any report of examination of the defendant made at the instance of the defense shall be furnished to the prosecution a reasonable time in advance of trial." The previous version of this statute only required the defense to provide the prosecution with copies of any reports or examinations containing information that the defense intended to introduce as evidence or testimony. § 16–8–108(2), 8A C.R.S. (1987) (amended by Ch. 119, sec. 4, § 16–8–108(2), 1987 Colo.Sess.Laws 622, 623). By amending section 16–8–108(2) and enacting section 16–8–103.6, the legislature intended to establish a statutory scheme that would provide the prosecution in cases where the defendant pleads a mental status defense with as full an array of psychiatric information about the defendant as possible.

Although the constitutionality of sections 16–8–103.6 and 16–8–108(2), 8A C.R.S. (1994 Supp.), as they pertain to post-offense examinations of the defendant is in question, *see infra,* part III, there is no constitutional issue regarding pre-offense examinations. A defendant's right to effective assistance of counsel is not implicated by requiring the defense to provide the prosecution with the defendant's pre-offense psychiatric reports. Therefore, I concur with the majority that a defendant is not entitled to suppression of

pre-offense psychiatric reports where the defendant waives the physician-patient privilege by pleading not guilty by reason of insanity pursuant to section 16–8–103, 8A C.R.S. (1986), or asserting the affirmative defense of impaired mental condition pursuant to section 16–8–103.5, 8A C.R.S. (1986 & 1994 Supp.).

### III.

### Effective Assistance of Counsel and Confidentiality Protections Afforded to Defense Experts

The Sixth Amendment to the United States Constitution and article II, section 16, of the Colorado Constitution guarantee a criminal defendant the right to counsel. Because the right to counsel is essential to ensuring that the accused receives a fair trial, it is well established that the right to counsel includes the right to effective assistance of counsel. *E.g., McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *Hutchinson,* 742 P.2d at 880; *People v. Norman,* 703 P.2d 1261, 1272 (Colo.1985); *People v. White,* 182 Colo. 417, 422, 514 P.2d 69, 71–72 (1973). As part of counsel's duty to provide effective assistance to the accused, counsel is required to make reasonable investigations in connection with the case. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984); *White,* 182 Colo. at 421–422, 514 P.2d at 71. In fact, the *American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function,* which provides a guide to professional practice, requires defense counsel to conduct a prompt and thorough investigation. *ABA standards for Criminal Justice Prosecution Function and Defense Function,* standard 4–4.1 (3rd ed. 1993). The Commentary to standard 4–4.1 makes clear the importance of thorough investigation in order for a lawyer to provide effective assistance to a client. The Commentary states, "Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross examination or impeachment of adverse witnesses at trial or to conduct plea discussions effectively." *Id.* at 183.

Expert psychiatric testimony as to a client's state of mind is a crucial avenue of investigation for a criminal defense attorney. The Fourth Circuit Court of Appeals in *United States v. Taylor* recognized the importance of expert psychiatric assistance to a criminal defense attorney:

The assistance of a psychiatrist is crucial in a number of respects to an effective insanity defense. In the first place, the presence or absence of psychiatric testimony is critical to presentation of the defense at trial. . . .

Moreover the use of an expert for other, non-testimonial, functions can be equally important. Consultation with counsel attunes the lay attorney to unfamiliar but central medical concepts and enables him, as an initial matter, to assess the soundness and advisability of offering the defense. The aid of a psychiatrist informs and guides the presentation of the defense, and perhaps most importantly, it permits a lawyer inexpert in the science of psychiatry to probe intelligently the foundations of adverse testimony.

*United States v. Taylor,* 437 F.2d 371, 377 n. 9 (4th Cir.1971); *see also Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (state must provide funds for a psychiatric exam of indigent defendant to aid defense in establishing insanity defense).

Because of the importance of expert psychiatric assistance to attorneys when counseling their clients, many courts have held that the results of defense ordered psychiatric exams, where the defense has not elected to introduce these findings at trial, are privileged under the attorney-client privilege. These courts have held this information privileged in cases where the defendant has pled not guilty by reason of insanity. *See United States v. Alvarez,* 519 F.2d 1036 (3rd Cir. 1975) (admission of testimony of psychiatrist who conducted examination of accused at behest of defense attorney in trial where defendant pled insanity was error); *People v. Lines,* 13 Cal.3d 500, 119 Cal.Rptr. 225, 531 P.2d 793 (1975) (results of defense-requested

psychiatric examination in trial where defendant pled insanity not discoverable); *State v. Toste*, 178 Conn. 626, 424 A.2d 293 (1979) (psychiatrist's testimony in trial where defendant pled insanity covered by defendant's attorney-client privilege even though psychiatric exam ordered by court on defense attorney's motion); *State v. Kociolek*, 23 N.J. 400, 129 A.2d 417 (1957) (where psychiatrist was engaged by defendant's attorneys, mental diagnosis and opinion were privileged under the attorney-client privilege and privilege was not waived by defendant testifying at trial); *see also Houston v. State*, 602 P.2d 784 (Alaska 1979); *Pouncy v. State*, 353 So.2d 640 (Fla.Dist.Ct.App.1977); *People v. Knuckles*, No. 73616, 1994 WL 46880 (Ill. Feb. 17, 1994); *State v. Pratt*, 284 Md. 516, 398 A.2d 421 (1979); *People v. Hilliker*, 29 Mich.App. 543, 185 N.W.2d 831 (1971). We have also held prior to the enactment of section 16–8–103.6, 8A C.R.S. (1994 Supp.) that a defendant's disclosures to a defense-retained psychiatrist are privileged under the attorney-client privilege even in cases where the defendant pleads a mental status defense. *Miller*, 737 P.2d at 838.

The attorney-client privilege is closely related to the right to counsel guaranteed by the United States Constitution and the Colorado Constitution. U.S. Const. amend. VI; Colo. Const. art. II, § 16. We recognized this connection in *Hutchinson*, in which we stated:

> We believe the confidentiality and loyalty of expert consultants traditionally enjoyed by defendants and defense counsel is a crucial element in the effective legal representation of the defendant. A relationship of trust permits the defendant, counsel and the expert to engage in a full and frank interchange, affording counsel an accurate and honest assessment of the defendant's case. Without such a relationship, the assistance of the expert, and thus defense counsel, is likely to be ineffective.

742 P.2d at 882. In this statement we acknowledged the importance of the attorney-client privilege to ensuring the effective assistance of counsel. In *Hutchinson*, we held that the attorney-client privilege extends to

the findings of a handwriting expert hired by the defense. The attorney-client privilege barred the prosecution from calling in its case in chief an expert witness hired by the defense.

Although *Hutchinson* dealt specifically with the need for a handwriting expert, we identified the importance of expert testimony for an attorney in a variety of contexts:

> Criminal cases commonly involve complex issues revolving around medical, *psychiatric*, scientific or accounting concepts. Frequently, in these types of cases, it is not only desirable—but absolutely vital—that a defense attorney consult an expert for guidance and interpretation. Without such assistance, an attorney may be unable to rationally determine technical and evidentiary strategy or to properly prepare for cross examination of the prosecution's witnesses or for presentation or rebuttal of physical evidence.... Consequently, *it cannot be denied that a defense counsel's access to expert assistance is a crucial element in assuring a defendant's right to effective legal assistance, and ultimately, a fair trial.*

*Id.* at 881 (citations omitted and emphasis added).

Other courts have recognized the connection between protecting psychiatric testimony under the attorney-client privilege and the Sixth Amendment right to counsel in the insanity defense context. In *Alvarez*, the Third Circuit Court of Appeals wrote:

> We see no distinction between the need of defense counsel for expert assistance in accounting matters and the same need in matters of psychiatry. The effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting.... But when, as here, the defendant does not call the expert the same privilege applies with respect to communications from the defendant as applies to such communications to the attorney himself.

519 F.2d at 1046; *see also People v. Fuller*, 791 P.2d 702, 711 (Colo.1990) (Lohr, J., dissenting); *Knuckles*, No. 73616, 1994 WL

46880, at 5; *Pratt,* 398 A.2d 421, 423; *State v. Mingo,* 77 N.J. 576, 392 A.2d 590, 592–594 (1978).[3] These courts have recognized that requiring the defense to provide the findings of its psychiatric experts to the prosecution severely compromises the defendant's right to effective assistance of counsel. A defense attorney's ability to investigate a case fully is substantially impaired if the attorney must risk production to the state of any prejudicial information discovered. This creates an impermissible pressure on attorneys to curtail their investigative efforts in order to avoid producing evidence for the prosecution.

The majority asserts in holding that section 16–8–103.6 does not violate an accused's right to effective assistance of counsel that this statute is necessary to promote the discovery of the truth. The majority argues that because the accused is the sole source of evidence to determine sanity, there is the potential for the defendant to obfuscate the truth by manipulating the information the state receives. Maj. op. at 296. In addition, the majority contends that the "interest of public justice" compels full disclosure of psychiatric evaluations in contrast to the protections afforded to other expert testimony. Maj. op. at 295. The majority also maintains that our holding in *Hutchinson,* that expert testimony is covered under the attorney-client privilege, is not dispositive of the present case. The majority states that in *Hutchinson* the defense expert's information was offered on the issue of the defendant's guilt rather than the limited issue of insanity as is the case here. Maj. op. at 295.

I find the majority's reasoning unpersuasive. First, the legislature has provided the prosecution with adequate access to psychiatric information about the defendant. Section 16–8–103.5(4), 8A C.R.S. (1994 Supp.), requires the court to order a defendant who pleads the defense of impaired mental condition to be examined pursuant to section 16–8–106, 8A C.R.S. (1986 & 1994 Supp.). Section 16–8–105(1), 8A C.R.S. (1986), requires the court to commit a defendant who pleads not guilty by reason of insanity for a sanity investigation. This sanity investigation is also conducted in compliance with section 16–8–106. Section 16–8–106(1), 8A C.R.S. (1994 Supp.), provides for a thorough examination of the defendant.[4] The prosecuting attorney has full access to reports of these examinations. § 16–8–106(4), 8A C.R.S. (1986). Further, this court has held that the mandatory examination scheme does not preclude the private employment of physicians or psychiatrists by the prosecution with a view toward offering their testimony. *Early v. People,* 142 Colo. 462, 468–469, 352 P.2d 112, 116, *cert. denied,* 364 U.S. 847, 81 S.Ct. 90, 5 L.Ed.2d 70 (1960).[5] In addition to the court ordered examinations, the prosecution is privy to any psychiatric reports the defense elects to use at the sanity trial.[6] § 16–8–

---

3. I recognize that many courts have ruled that prosecutorial discovery and use of defense psychiatric information is not prohibited by the right to effective assistance of counsel. *See* Maj. op. at 295–296. I am persuaded, however, that the contrary authority upon which I rely is better reasoned and more consistent with effectuation of the protections that the Sixth Amendment right to counsel was adopted to provide.

4. Section 16–8–106(1) requires: "All examinations ordered by the court in criminal cases shall be accomplished by the entry of an order of the court specifying the place where such examination is to be conducted and the period of time allocated for such examination.... The defendant shall be observed and examined by one or more physicians who are specialists in nervous and mental diseases during such period as the court directs. For good cause shown, upon motion of the prosecution or defendant, or upon the court's own motion, the court may order such further or other examination, including services

of psychologists, as is advisable under the circumstances. Nothing in this section shall abridge the right of the defendant to procure a psychiatric examination as provided in section 16–8–108."

5. *Early* was decided under 1953 C.R.S. § 39–8–1, and 1953 C.R.S. § 39–8–2 which are the predecessors to sections 16–8–103 and 16–8–105, respectively. Since the two statutory schemes are almost identical, the ruling in *Early* is equally applicable today.

6. Section 16–8–108(2) as amended requires the defense to provide the prosecution with any report of examination of the defendant made at the instance of the defense. As stated above, this statute may violate a defendant's constitutional right to counsel. *See supra,* pp. 299–300. The reasoning in Section III, discussing a defendant's right to effective assistance of counsel as it pertains to the majority's discussion of section 16–8–

108(2), 8A C.R.S. (1994 Supp.); *People v. Rosenthal,* 617 P.2d 551, 555 (Colo.1980). The prosecution may use this information to consult its own experts as well as to cross examine defense experts.

Second, psychiatrists and psychologists are experts in their field. The majority's fears that defendants will be able to manipulate their behavior to such an extent that professional psychiatrists and psychologists will be mistaken as to their sanity are overstated. Maj. op. at 296. I do not believe most defendants are capable of this manipulation or that trained professionals will be so easily deceived.

Third, I find the majority's suggestion that defense psychiatric records are necessary to promote truth because the accused will be more candid with defense experts to be unfounded. Maj. op. at 295, 296. Any extra openness a defendant may have with defense experts will disappear as a result of the majority's ruling. Defense counsel will advise their clients as to the effect of the majority's ruling in this case. Defendants, knowing that the prosecution may be able to use reports from any psychiatrist to whom they speak, will be equally guarded with all experts. The majority's ruling does little to enhance a trier of fact's knowledge as to a defendant's state of mind.

Fourth, the legislature has provided for examination of uncooperative defendants. Section 16–8–106(3), 8A C.R.S. (1986), provides:

> When the defendant is noncooperative with psychiatrists and other personnel conducting the examination, an opinion of the mental condition of the defendant may be rendered by such psychiatrists or other personnel based upon such confessions, admissions, and any other evidence of the circumstances surrounding the commission of the offense, as well as the known medical and social history of the defendant, and such opinion may be admissible into evidence at trial. It shall also be permissible to conduct a narcoanalytic interview of the defendant with such drugs as are medically

appropriate and to subject the defendant to a polygraph examination.

This provision furthers the truth-seeking process by allowing psychiatric experts to use a variety of methods to ascertain a defendant's "true" state of mind. In addition, this statute also authorizes "psychiatrists and other personnel" to testify as to the results of the narcoanalytic interview and polygraph examination to the extent that the results entered into the formation of their opinions. *Id.* This provision, by ensuring that the prosecution has reliable psychiatric data about the accused, lessens the prosecution's need for reports from defense-retained experts.

The majority also claims that our holding in *Hutchinson,* that the prosecution's use of a defense handwriting expert as part of its case in chief violated the defendant's right to effective assistance of counsel, is not dispositive of this case. Maj. op. at 295. The majority distinguishes *Hutchinson* by stating that the expert opinion in *Hutchinson* was offered in the guilt phase of a trial and the psychiatric testimony in this case is offered only on the issue of insanity. *Id.* Although in *Hutchinson,* we mentioned this guilt/sanity distinction, we did so only to distinguish non-controlling cases. 742 P.2d 875, 885. There is no significant difference between the guilt and sanity phases of a trial that justifies the majority's ruling.

We considered a similar argument in *People ex rel. Juhan v. District Court,* 165 Colo. 253, 263–270, 439 P.2d 741, 746–750 (1968). In *Juhan* we held a statute that required a defendant to prove insanity beyond a reasonable doubt to be unconstitutional. While doing so we considered and disposed of the argument that there is a difference between the guilt and insanity phase of trial that justifies a different constitutional standard. We stated:

> The argument is made that in a criminal case, even though insanity is a full and complete defense, where that issue by statute must be tried separately no defendant

103.6, is applicable to section 16–8–108(2) to the extent that section 16–8–108(2) requires a defendant to disclose to the prosecution reports of

defense-retained psychiatrists which the defendant does not intend to use at trial.

can be found guilty, and for that reason "due process of law" does not require that this very material ingredient of guilt must be established beyond a reasonable doubt. By procedurally requiring a separate trial on this issue of mental capacity to commit any crime—which admittedly is a necessary ingredient of any offense—in some mystical way, it is argued that the material ingredient thus set apart for separate trial shall be governed by rules wholly inapplicable to all other necessary ingredients of the completed offense to be thereafter adjudicated; and this is urged notwithstanding the firmly established doctrine that as to every necessary ingredient of the total crime there must be proof beyond a reasonable doubt.

*Id.* at 264, 439 P.2d at 747. In *Juhan* we recognized that in the separate sanity trial the guilt of the defendant as to mental capacity to commit a crime is being finally determined. *Id.* at 263, 439 P.2d at 746. For this reason we held that the defendant's right to due process and the attendant requirement of proof beyond a reasonable doubt is applicable to the sanity phase of a trial as well as to the guilt phase. The same reasoning should apply in the present case.

A defendant's liberty is equally at stake in both the guilt and sanity phases of trial. A defendant's need for effective assistance of counsel is equally grave. Because the defendant's legal culpability is being decided in both the guilt and insanity phases of trial, a defendant's constitutional right to effective assistance of counsel should be protected in both. Thus, the right of a defense counsel to consult with experts without fear of compelled disclosure should apply here.

Finally, the majority bases much of its decision on ensuring the viability of the truth-seeking process. Maj. op. at 296. Truth-seeking of course is, important. However, the criminal justice system is based on the principle that truth seeking is best achieved through the adversarial process. " 'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.' " *United States v. Cronic,* 466 U.S. 648, 655, 104 S.Ct. 2039,

2045, 80 L.Ed.2d 657 (1984) (quoting *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)). Allowing defense counsel to consult freely with their own experts will promote truth seeking through the adversary process. As we stated in *Hutchinson:*

> Therefore, we cannot approve the use of defense counsel's expert in the fashion employed in this case [prosecution used defense handwriting expert in case in chief]. Such a practice is inconsistent with the meaningful adversarial exchange guaranteed by the sixth amendment and article II, section 16 of the Colorado Constitution. As the Supreme Court has said, when the judicial process loses its character as confrontation between adversaries, the right to counsel has been violated.

742 P.2d at 882 (citing *Cronic,* 466 U.S. at 656–57, 104 S.Ct. at 2045–46). Requiring disclosure of defense-procured psychiatric information erodes the adversarial process by compromising a defense counsel's ability to investigate a case and advise a client. Shielding this information will ensure effective advocacy and thus promote truth seeking.

The arguments advanced by the majority do not persuade me of the correctness of the cramped scope that it recognizes for a defendant's constitutional right to effective assistance of counsel. As explained above, the improvement to the truth seeking process is minimal and the detriment to the defendant and the criminal justice system is great. Absent a compelling necessity on the part of the prosecution—not present here—I would hold that compelled disclosure of non-testifying defense psychiatric expert reports and prosecutorial use of these experts in its case in chief violates a defendant's constitutional right to effective assistance of counsel. To the extent that sections 16–8–103.6 and 16–8–108(2), 8A C.R.S. (1994 Supp.), require disclosure and allow the prosecution to use this testimony, I would hold these provisions unconstitutional.

SCOTT, J., joins in this opinion.