**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Brent D. ULLERY, Defendant–Appellant.**

No. 95CA1020.

Colorado Court of Appeals, Div. II.

Oct. 30, 1997.

Rehearing Denied Jan. 15, 1998.

Petition for Certiorari Denied and Cross–Petition Granted Oct. 19, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Douglas J. Friednash, Special Assistant Attorney General, Denver, for Plaintiff-Appellee.

Katharine K. Nanda, Denver, for Defendant-Appellant.

Opinion by Judge DAVIDSON.

Defendant, Brent D. Ullery, appeals from the judgment of conviction entered on a jury verdict finding him guilty of criminal attempt, robbery of the elderly, aggravated robbery, possessing an illegal weapon, and first degree assault. At trial, defendant raised the affirmative defense of impaired mental condition. We reverse and remand.

## I.

Pursuant to 16–8–103.6, C.R.S.1997, because defendant raised the defense of impaired mental condition, the prosecution was entitled to names, addresses, reports, and statements of any physician or psychologist who treated or examined the defendant for such mental condition. Accordingly, the prosecutor requested discovery of the file of defendant's medical expert. Claiming attorney-client privilege and work product protection, defendant refused. In response to the prosecutor's motion to compel, the trial court ordered the release of the entire file pursuant to 16–8–103.6 on the grounds that, by raising such defense, defendant had waived all such privileges and protections.

Defendant argues that the automatic waiver of these privileges violates the attorney-client privilege and his constitutional right to effective assistance of counsel. He also claims that the expert's file was protected as attorney work product.

## A.

First, defendant's contention to the contrary notwithstanding, *Gray v. District Court,* 884 P.2d 286 (Colo.1994) is dispositive of his contention that, because it requires production of his expert's medical records, 16–8–103.6, C.R.S.1997, violates the attorney-client privilege.

In *Gray v. District Court, supra,* in rejecting a claim nearly identical to that of defendant, the supreme court held that, under 16–8–103.6, when a defendant tenders a plea of not guilty by reason of insanity or asserts the affirmative defense of impaired mental condition, there is a waiver of the physician/psychologist-patient privilege and the protection given to communications made to a physician or psychologist in the course of examination or treatment. The court also held that the attorney-client privilege is waived insofar as it extends to communications between the client and agents of the attorney, specifically the psychiatrist or psychologist.

In its determination, the *Gray* court specifically analyzed and rejected the defendant's contention that such waiver interfered with his Sixth Amendment right to effective assistance of counsel.

## B.

Defendant suggests that, even if he was required to disclose his expert's records of treatment or evaluation, such discovery was limited only to the expert's written reports. We disagree.

By its terms, 16–8–103.6 explicitly requires disclosure of all communications made by the

defendant to a physician or psychologist in the course of treatment or examination. *See Gray v. District Court, supra.* As the *Gray* court determined, the legislative history of this section demonstrates that the General Assembly intended to allow for full disclosure of medical and mental health records concerning a mental condition that the defendant places in issue in a criminal case.

We conclude, therefore, that discovery under 16–8–103.6 includes all such medical records.

### C.

Nevertheless, defendant contends that, even if the attorney-client and physician/psychologist-patient privileges are waived under 16–8–103.6, his expert's file was protected under the doctrine of attorney work product. Defendant argues that the file is protected from disclosure in two ways: One, the doctrine protects opinions, theories, and conclusions of a defendant's attorney contained in the file; and, two, it protects the documents and notes of the expert as agent of the defense attorney. We agree with the first argument, but disagree with the second.

■ The attorney-client privilege and the protection given to attorney work product are different. Generally, the attorney-client privilege protects communications between the attorney and the client, and the promotion of such confidences is for the benefit of the client. On the other hand, the work product exemption usually applies to documents and tangible things prepared in anticipation of litigation or for trial, and its goal is to protect the attorney's thought process from discovery and, therefore, afford him or her the opportunity to prepare a case free from unnecessary intrusion by opposing parties and counsel. *People v. Small,* 631 P.2d 148 (Colo.1981); *A v. District Court,* 191 Colo. 10, 550 P.2d 315 (1976).

■ Although the doctrine is most frequently asserted as a bar to discovery in civil litigation, it applies with equal, if not greater, force in criminal prosecutions. *People v. District Court,* 790 P.2d 332 (Colo.1990); *see United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

■ In criminal cases, work product is defined as legal research, records, correspondence, reports and memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney or members of his or her legal staff. Crim. P. 16(I)(e)(1). The work product of defense counsel has the same protection from discovery as the work product of the prosecution. *Lanari v. People,* 827 P.2d 495 (Colo.1992). *See People ex rel. VanMeveren v. District Court,* 187 Colo. 333, 531 P.2d 626 (1975).

### 1.

■ We agree with defendant that the work product of defense counsel is not included within the scope of the waiver required by 16–8–103.6.

First, nothing in 16–8–103.6 can be read to abrogate that doctrine. The focus of 16–8–103.6, as discussed, is open disclosure of medical records under circumstances such as here, and, by its plain terms, its scope does not extend to the opinions, theories, or conclusions of defense counsel.

Similarly, nothing contained in the supreme court's analysis in *Gray* implies that the waiver of the physician-patient or attorney-client privilege extends to a waiver of attorney work product. As the court pointed out, the statute's purpose is to ascertain the truth of the defendant's mental condition which requires full access to defendant's medical reports and diagnostic assessments by experts who have examined defendant before or after the crime. *Gray v. District Court, supra.* However, disclosure of an attorney's thought processes simply does not advance that purpose. Hence, the policy reflected in 16–8–103.6 is not harmed by any protection given to attorney work product.

Therefore, and the People do not appear to contend otherwise, the doctrine precluded disclosure here of defense counsel's opinions, theories, or conclusions. *See People v. Edney,* 39 N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976) (even when defendant raises mental condition as a defense, work product doctrine protects facts and observations of the attorney); *State v. Pawlyk,* 115

Wash.2d 457, 800 P.2d 338 (Wash.1990) (same).

2.

■ Defendant next argues that his expert was an agent of the attorney and, as such, his expert's documents and notes also should have been protected from disclosure under the attorney work product doctrine. We disagree.

In some jurisdictions, by statute or rule, an attorney's work product is defined to include the work product of an expert who has been hired or consulted by counsel. *See, e.g., State ex rel. Corbin v. Ybarra,* 161 Ariz. 188, 777 P.2d 686 (1989).

Here, however, the definition of work product set forth in Crim. P. 16(I)(e)(1) does not extend to work produced by experts, and by the plain language of the rule, such documents or notes are not protected from discovery. Compare Crim. P. 16(I)(e)(1) with Crim. P. 16(II)(b) (requiring disclosure of medical and scientific reports of experts, including results of mental examinations). *See also Richardson v. District Court,* 632 P.2d 595 (Colo.1981) (attorney work product doctrine is not of constitutional origin and is limited in scope); cf. *State v. Carter,* 641 S.W.2d 54 (Mo.1982) (opinion of expert hired by defendant not opinion, theory, or conclusion of defendant's counsel under agency theory or otherwise); *State v. Edney, supra* (work product doctrine protects attorney, not expert).

Furthermore, as discussed, under 16–8–103.6, any privilege or confidentiality between a defendant and the psychologist or physician automatically is waived. And, since the purpose of the statute is, in "the interest of public justice," to provide for broad disclosure of medical records when defendant raises the defense involving his mental condition, *see Gray v. District Court, supra,* at 295, even if the scope of the attorney's work product were to include an expert's documents, under the circumstances here, the interest in full disclosure reflected in 16–8–103.6 would outweigh any interest in the protection of an expert's work. *See Austin v. Alfred,* 163 Ariz. 397, 788 P.2d 130 (Ariz.App.1990) (balancing the interests in-

volved when insanity defense is raised, work product principle does not bar disclosure of expert's reports); *see also Richardson v. District Court, supra* (the exemption from discovery of work product is not absolute and may be granted upon a showing of substantial need and inability to obtain the equivalent information without substantial hardship).

3.

■ Although the trial court properly determined that all of the expert's medical reports, documents, and notes were discoverable, because we have concluded that protection for the work product of defense counsel was not waived under 16–8–103.6, and because the record indicates that defendant properly asserted that portions of his expert's file contained such work product, we agree with defendant that the trial court was required to conduct an in camera examination and excise such portions, if any, of the file. Crim. P. 16(III)(e) and (f); cf. *Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980) (trial court must conduct in camera examination of the files and reports).

■ Furthermore, the trial court's failure to do so cannot be considered harmless. Here, defendant's offer of proof adequately demonstrated that the expert's file contained defense counsel's work product, including, for example, handwritten notes detailing counsel's mental impressions.

In addition, an accused has a constitutional right to present a defense, and this includes the right to call witnesses in his or her behalf. *People v. Hampton,* 696 P.2d 765 (Colo.1985). When the trial court erroneously rules on a matter which precludes the defendant from presenting a witness, the ruling can cast "an impermissible chill on the defendant's freedom of decision." *See People v. Kreiter,* 782 P.2d 803, 805 (Colo.App.1988); cf. *People v. Pronovost,* 773 P.2d 555 (Colo. 1989).

Here, because of the trial court's ruling, defendant withdrew his endorsement of his expert witness, "not because I want to but because I'm being forced to under the cir-

cumstances here." Moreover, the only significant disputed issue at trial was defendant's mental condition, the resolution of which hinged on which expert the jury believed. We have reviewed the record, and, although defendant did find other experts to testify at trial, we cannot speculate that the substitution of one expert for another, under the particular circumstances here, did not result in prejudice to the defendant. Cf. *People v. Sandoval*, 805 P.2d 1126 (Colo.App. 1990) (describing circumstances when improper exclusion of defendant's experts not harmless despite other expert testimony presented by defense).

## II.

Because it may arise on remand, we address and reject defendant's contention that his decision to be re-interviewed without counsel was not knowing or intelligent, or a voluntary waiver of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■■ In order for a waiver of *Miranda* rights to be valid, the prosecution must prove by a preponderance of the evidence that such waiver was knowingly, intelligently, and voluntarily made. A *Miranda* waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. The waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Pease*, 934 P.2d 1374 (Colo.1997).

■■■ The waiver of the right to counsel after the invocation of that right requires additional considerations. Once a defendant is in custody and requests counsel, all police initiated interrogation must cease until the accused has consulted an attorney. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, a suspect's request for the assistance of counsel is not irrevocable. *People v. Martinez*, 789 P.2d 420 (Colo.1990). If the suspect invokes his or her right to counsel, a court may admit his or her responses to further questioning if the court finds that the suspect initiated the dis-

cussion with the police and knowingly and intelligently waived the right previously invoked. *People v. Rosales*, 911 P.2d 644 (Colo.App.1995).

■■■ A waiver of the right to counsel under such circumstances is valid if it is knowing and intelligent under the totality of the circumstances based upon the particular facts and circumstances surrounding the case. *People v. Martinez, supra.*

■■■ Here, when the police arrested defendant, he stated, "I did it and I want the death penalty." He later repeated this statement to other officers, and explained that he wanted to ensure that he would not inadvertently be exculpated. Defendant stated, "Will you read me my *Miranda* rights? I don't want any loopholes."

At the police station, defendant was again advised of his *Miranda* rights during a videotaped interview. Defendant requested an attorney to help him understand whether he could get the death penalty, and told the officer, "Once I get my question clarified, I'll be willing to talk." The officer replied, "You have to understand that an attorney's going to tell you not to make any statements at all." The officer then told defendant that he would have to initiate any further contact with them and gave defendant his card. The officer stayed for another 18 minutes, during which time he engaged in routine, "book-in" conversation with defendant.

Defendant then was taken to a holding cell, where he remained alone for an hour before he asked to talk to the officer. The officer would not allow defendant to say anything until he was in the interview room, until the videotape was recording, and until defendant was readvised of his *Miranda* rights. In a series of questions, the officer again explained each right to defendant, including his continuing right to remain silent and to consult with an attorney. Defendant agreed to speak to the officer without an attorney, signed another *Miranda* waiver, and without further questioning, confessed to the charges.

After an evidentiary hearing, the trial court suppressed any statements made by defendant after he had requested counsel but

before he was taken to the holding cell. The court ruled that defendant's later confession, however, was admissible. We find no error.

Here, based on a proper assessment of the issue, the trial court found that defendant had knowingly and intelligently relinquished his right to counsel. The record indicates that, after having requested an attorney, defendant initiated contact with the police, and that he understood the nature and ramifications of his waiver of his right to counsel. The record also supports the trial court's determination that earlier statements made which were suppressed did not taint defendant's later confession. The court found, with record support, that the officer's improper conversation with defendant did not influence defendant's subsequent decision to speak with the police without counsel. The court concluded, again with record support, that defendant "wanted to talk all along."

To the extent defendant asserts that, nonetheless, his waiver was invalid because the police "did not understand his reasoning," we disagree. The wisdom of a waiver decision is irrelevant. *People v. Pease, supra. See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (*Miranda* protects defendants against government coercion; it goes no further than that). Furthermore, there is ample record support for the trial court's determination that defendant's confession was voluntary.

Since the other issues raised by defendant do not appear likely to arise on remand, we do not address them.

The judgment is reversed and the cause is remanded for a new trial.

CRISWELL and ROTHENBERG, JJ., concur.