The PEOPLE of the State of
Colorado, Petitioner,

v.

Brent D. ULLERY, Respondent.

No. 98SC92.

Supreme Court of Colorado,
En Banc.

June 21, 1999.

As Modified on Denial of Rehearing
Oct. 4, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Douglas J. Friednash, Special Assistant Attorney General, Robert Mark Russel, First Assistant Attorney General, Appellate Division Denver, Colorado, Attorneys for Petitioner.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice SCOTT delivered the Opinion of the Court.

This appeal was initiated by the People of the State of Colorado, (the State), seeking our review of the judgment of the court of appeals reversing the conviction of respondent, Brent D. Ullery, (Ullery). *See People v. Ullery*, 964 P.2d 539 (Colo.App.1997). After a trial before the Adams County District Court (trial court), Ullery was convicted of several crimes, including criminal attempt to commit first degree murder,[1] robbery of the elderly,[2] aggravated robbery,[3] possessing a dangerous weapon,[4] and first degree assault.[5] Ullery asserted impaired mental condition as an affirmative defense. In preparation for trial, the State consequently subpoenaed the entire file of Ullery's expert psychiatrist. Ullery objected, alleging that the files con-

tained privileged attorney work product. The trial court ruled that Ullery had waived any privilege by asserting his affirmative defense, pursuant to section 16–8–103.6, 6 C.R.S. (1998). The court of appeals reversed, holding that the attorney work product was not discoverable and that the trial court should have conducted an in camera examination to excise work product material, if any, contained in the file. *See Ullery*, 964 P.2d at 543.

The State appealed to this court and we granted the State's petition for certiorari to determine whether defense counsel's work product is included within the scope of the statutory waiver set forth in section 16–8–103.6. Section 16–8–103.6 provides that a person who asserts the affirmative defense of impaired mental condition "waives any claim of confidentiality or privilege as to communications made by him to a physician or psychologist." We hold that although section 16–8–103.6 does not specifically exclude attorney work product from its waiver of confidentiality and privilege, the statute does not include a waiver of attorney work product. Therefore, we conclude that the trial court erred when it failed to examine the subpoenaed documents, in camera, to protect attorney work product from discovery. We further hold that any error was not preserved and cannot be reviewed on appeal because Ullery failed to make a record sufficient for appellate review. Accordingly, we affirm in part and reverse in part.

## I. Facts and Procedural History

On March 25, 1993, an elderly convenience store clerk was robbed at gunpoint. While fleeing the scene in his car, Ullery was stopped by a deputy sheriff (deputy) who signaled for Ullery to pull over. While the deputy approached Ullery's car, Ullery exited the car and fired a gun at the deputy. In return, the deputy fired his gun at Ullery, causing him to flee in his car. Ullery was eventually apprehended in a hotel parking lot

---

1. *See* §§ 18–2–101 and 18–3–102, 6 C.R.S. (1998).

2. *See* §§ 18–4–304 and 18–4–301, 6 C.R.S. (1998).

3. *See* § 18–4–302, 6 C.R.S. (1998).

4. *See* § 18–12–102, 6 C.R.S. (1998).

5. *See* 18–3–202(1), 6 C.R.S. (1998).

by other police officers. During his arrest, Ullery said to the arresting officers, "I did it, and I want the death penalty." The officers advised Ullery of his *Miranda* rights,[6] which he waived before confessing to committing the crimes charged.

Ullery raised the defense of impaired mental condition after being interviewed by Dr. John Glissman, a psychiatrist retained to examine Ullery. Prior to trial, the State served a subpoena duces tecum on Dr. Glissman requesting "all the written materials, tape recorded materials, videotape materials of any kind that were ... generated in association with [his] contact with Mr. Ullery." Defense counsel moved to quash the subpoena, asserting that the materials were being used in preparation for trial and citing *Miller v. District Court In and For City and County of Denver*, 737 P.2d 834 (Colo.1987) (holding that requested materials of defense psychiatrist were protected pursuant to the attorney client privilege). At a subsequent motions hearing, defense counsel elaborated, stating that:

> If this Court wishes to have [Dr. Glissman's] handwritten notes that would be one thing, but in his records are all sorts of information that are part of my work product that I think are totally improper for the prosecution to obtain.... There's notes that I have made, letters that I have written, things that are clearly attorney-client privilege and my work product....

In response, the State contended that, because Dr. Glissman had been endorsed as a defense witness, the waiver contained in section 16–8–103.6 was applicable, and the materials were not protected by any privilege. The trial court agreed with the State, ruling, "I think any claim to work product or any other confidential material on the part of [defense] counsel as opposed to the doctor is waived when those communications are made, knowing that this material is going to be the subject of our court procedure."

Before his trial was held, Ullery filed a Petition for Relief in the nature of a Writ of Prohibition, pursuant to C.A.R. 21. Ullery asked that we exercise our original jurisdic-

tion to review the trial court's ruling and that we stay the proceedings below. We denied Ullery's petition.

In the course of the proceedings before the trial court, the State filed a motion to compel discovery in accordance with the trial court's order. In response, Ullery requested an ex parte hearing in order to obtain appropriate protective orders regarding the confidential materials and to preserve the record for appellate review. The trial court denied the request for an ex parte hearing, but ruled that defense counsel could make "an ex parte record with the court reporter regarding whatever you want to make a record on. I'm not going to listen to it." At the same hearing, with the trial court's permission, Ullery elected to withdraw his endorsement of Dr. Glissman as a witness for trial, retaining him as an advisory witness only.

At trial, instead of relying upon the testimony of Dr. Glissman, Ullery utilized the testimony of two other witnesses. Dr. William Dahlberg and Dr. Suzanne Bernhard were certified by the trial court as experts in the fields of forensic psychology and psychology, respectively. Dr. Dahlberg testified that, at the time of the alleged offenses, Ullery suffered from "schizoaffective disorder bipolar depressed type" and "was extremely psychotic." Dr. Dahlberg also testified that Ullery suffered from visual and auditory hallucinations, that he believed that on the night in question Ullery was "under the influence of some extremely disruptive thought process," and that Ullery's actions were "out of his control altogether." Dr. Bernhard testified that Ullery suffered from an impaired mental condition that made him incapable of forming the requisite mental state at the time of the alleged offenses. Dr. Bernhard also testified that Ullery suffered from schizoaffective disorder, was suicidal, and experienced regular visual and auditory hallucinations in the form of voices that conducted "a running commentary [on] his behavior, [including] many, many insults."

Despite this testimony, the jury convicted Ullery of all charges. The trial court determined that Ullery was not competent to proceed with sentencing, and remanded him to

6. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the custody of the State Hospital. Once Ullery was determined to be competent, the trial court sentenced him to the Department of Corrections for thirty years for attempted first degree murder, ten years for robbery of the elderly, aggravated robbery, and first degree assault, and four years for possession of a dangerous weapon.

On appeal, Ullery contended, as relevant here, that the trial court erred in permitting discovery of the materials defense counsel alleged were attorney work product. The court of appeals agreed, and reversed and remanded for a new trial. *See Ullery*, 964 P.2d at 543–44. In so doing, the court of appeals held that section 16–8–103.6 does not include attorney work product within its scope, that Ullery had waived his privilege to withhold the records of Dr. Glissman, that the trial court should have conducted an in camera examination of the materials to excise the work product portions of the file, and that the error in failing to do so prejudiced Ullery since he was forced to substitute expert witnesses. *See Ullery*, 964 P.2d at 543–44.

## II. § 16–8–103.6 and Attorney Work Product

The State contends that under section 16–8–103.6 any and all privileges, including attorney work product, were waived. Because we conclude that the statutory waiver contained in section 16–8–103.6 does not encompass attorney work product, we disagree. We therefore hold that, on a defendant's motion claiming attorney work product, the trial court should conduct an in camera examination to determine whether portions of the subject file contain defense counsel's work product. We further hold that if such an examination discloses attorney work product, the trial court should protect such portions of the file from the State's discovery request.

7. Section 16–8–102(2.7)(a), defines impaired mental condition as:
   a condition of mind, caused by mental disease or defect which does not constitute insanity but, nevertheless, prevents the person from forming a culpable mental state which is an essential element of a crime charged. For the purposes of this subsection (2.7), "mental disease or defect" includes only those severely

## A. § 16–8–103.6 Does Not Reach Attorney Work Product

Section 16–8–103.6, which governs waiver of confidentiality and certain privileges when asserting the affirmative defense of impaired mental condition [7] provides, in pertinent part:

(1)(a) A defendant who places his or her mental condition at issue by pleading not guilty by reason of insanity pursuant to section 16–8–103, asserting the affirmative defense of impaired mental condition pursuant to section 16–8–103.5, raising the question of incompetency to proceed pursuant to section 16–8–110, or disclosing witnesses who may provide evidence concerning the defendant's mental condition during a sentencing hearing held pursuant to section 16–11–103 or 16–11–802 *waives any claim of confidentiality or privilege as to communications made by the defendant to a physician or psychologist in the course of an examination or treatment for such mental condition for the purpose of any trial,* hearing on the issue of such mental condition, or sentencing hearing conducted pursuant to section 16–11–103 or 16–11–802. The court shall order both the prosecutor and the defendant to exchange the names, addresses, reports, and statements of any physician or psychologist who has examined or treated the defendant for such mental condition.

(b) This subsection (1) shall apply only to offenses committed before July 1, 1995.

§ 16–8–103.6, 6 C.R.S. (1998) (emphasis added).

We have previously held that when a defendant asserts the affirmative defense of impaired mental condition, he "waives his right to claim the attorney-client and physician/psychologist-patient privileges pursuant to section 16–8–103.6, and consents to disclo-

abnormal mental conditions which grossly and demonstrably impair a person's perception or understanding of reality and which are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance; except that it does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

sure of pre- or post-offense information concerning the defendant's medical condition." *Gray v. District Court of the Eleventh Judicial District*, 884 P.2d 286, 293 (Colo.1994). In *Gray*, a defendant, charged with multiple felonies, pleaded not guilty by reason of insanity, and asserted the affirmative defense of impaired mental condition. *See id.* at 288. In addition, he filed a motion to suppress records of a pre-offense psychiatric hospitalization, and requested a constitutional interpretation of section 16–8–103.6. *See id.* The defendant contended that permitting the prosecution to have the records of those examinations would violate his right to effective assistance of counsel. *See id.* The trial court disagreed, ruling that because the defendant had placed his mental condition at issue, he had impliedly waived his right to assert any privilege. *See id.* at 288–89. On interlocutory appeal, we affirmed. Today, however, we address not physician patient privilege, but attorney work product.

■ Under the plain meaning of section 16–8–103.6, we conclude that the waiver of privileged communications includes the disclosure of medical records but does not apply to the thoughts and conclusions of defense counsel. There is nothing in the statute indicating that the waiver would apply to an attorney's theory or opinion regarding a defense involving the defendant's mental condition. Similarly, we see nothing in *Gray* to suggest that a waiver of a defendant's attorney-client privilege would extend to a waiver of attorney work product. As we stated in *Gray*, the legislative history of section 16–8–103.6 was to allow the fact-finder to "get at the truth" of the defendant's mental condition. *Id.* at 291. That end is not met by permitting intrusion into the mental processes of a defendant's attorney.

Thus, while the purpose of the statute is furthered by requiring disclosure of a psychiatrist's and/or a psychologist's reports regarding a defendant, we agree with the court of appeals that its purpose would not be furthered by forcing defense counsel to reveal her thoughts, opinions and strategies of the case. *See Ullery*, 964 P.2d at 542. Therefore, we conclude that the trial court erred in ordering Ullery to disclose those

portions of the subject files containing his attorney's work product to the prosecution.

## B. Court Procedure to Protect Attorney Work Product

■ Having concluded that the trial court erred in assuming that section 16–8–103.6 permitted such broad discovery as to include attorney work product, we now discuss the appropriate procedures for excising attorney work product.

■ Crim. P. 16(I)(e)(1) provides: "Work Product. Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting attorney or members of his legal staff." *See also People v. Martinez*, 970 P.2d 469, 475 (Colo. 1998) (work product doctrine "is designed to protect an attorney's mental processes"). Defense counsel's work product has the same protection from discovery as the prosecution's work product. *See Lanari v. People*, 827 P.2d 495, 498–99 (Colo.1992). When materials sought to be disclosed contain both work product and non-work product, this rule does not shield the entire document from disclosure. See *Martinez*, 970 P.2d at 475; *People v. District Court of El Paso County*, 790 P.2d 332, 336 (Colo.1990). Rather, "[w]hen some parts of certain material are discoverable under the provisions of these court rules, and other parts are not discoverable, the nondiscoverable material may be excised and the remainder made available" to the other party. Crim. P. 16(III)(e). Crim. P. 16(III)(e) contemplates the participation of the trial court, where necessary, when addressing materials that "are discoverable … and other parts that are not discoverable." *Id.* Implicit in our rules addressing the regulation of discovery is the authority of the trial court to examine material in chambers in order to excise attorney work product to protect undiscoverable information. Such a procedure, while informed, also contemplates that the trial court will take steps to preserve confidentiality and will create a record of its orders and actions for appeal. *See* Crim. P. 16(III)(e)(2).

In addition to an in chambers or informal in camera examination, our rules permit the trial court, in its discretion, to accomplish the same examination through a formal "in camera proceeding." Crim. P. 16(III)(f). Crim. P. 16(III)(f) provides a formal mechanism for determining whether the disputed materials are work product:

In Camera Proceedings. Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or portion of such showing, to be made in camera. A record shall be made of such proceedings. If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the appellate court in the event of an appeal.

Thus, informally or through in camera proceedings, the trial court should have conducted an examination of the requested files in order to determine which portions of the records, if any, were defense counsel's work product, and therefore entitled to protection from discovery. Upon completing such an informal or formal examination, the trial court should take steps to protect confidential or privileged material, including attorney work product, only requiring disclosure after a defendant has the opportunity to excise any such portions from material that is open to discovery.

## III. The Record Here Bars Our Review

■ Having concluded that section 16–8–103.6 does not include within its scope attorney work product, and having set forth the appropriate procedures by which to excise attorney work product from material sought in discovery, we would proceed to apply these rules to the facts of this case. Based on our review of the record, however, we conclude that although Ullery's objection to the trial court's ruling was properly made, he did not preserve the issue for our review, as he has failed to provide us with an adequate record on appeal.

■ A judgment entered by a court of general jurisdiction is presumed to be correct. *See Laessig v. May D & F*, 157 Colo.

260, 262, 402 P.2d 183, 185 (1965). Thus, it is the duty of the party asserting error to present a record demonstrating that error. *See* C.A.R. 10; *People v. Tippett*, 733 P.2d 1183, 1194 (Colo.1987); *Laessig*, 157 Colo. at 262, 402 P.2d at 185; *Application of Northwestern Mut. Life Ins. Co.*, 703 P.2d 1314, 1318 (Colo.App.1985). If the appealing party fails to provide us with such a complete record, we must presume the correctness of the trial court's proceedings. *See People v. Morgan*, 199 Colo. 237, 242, 606 P.2d 1296, 1300 (1980); *Herrera v. Anderson*, 736 P.2d 416, 418 (Colo.App.1987).

Here, the record does indicate that Ullery objected to the discovery of the file containing the disputed materials. Once the trial court indicated its decision to permit discovery of the file, defense counsel, cognizant that the record was incomplete, requested an ex parte hearing with the trial court in order to preserve the record for appeal. The trial court denied that request, but instead offered Ullery an opportunity to make an ex parte record, which would have resulted in a transcript, reviewable on appeal, indicating the reasons that the file should be deemed privileged. Ullery never made such a record. We therefore presume that Ullery acceded to the trial court's ruling, failing to create a record that would permit our review. We conclude that since the defendant did not make a record upon which an appellate court can review the issues on appeal, Ullery has not overcome the presumption that the trial court's ruling was correct. *See Morgan*, 199 Colo. at 242, 606 P.2d at 1300. Therefore, the court of appeals should not have considered Ullery's contention. Thus, we reverse that portion of the court of appeals' judgment that required that Ullery be given a new trial.

## IV. Conclusion

In sum, we hold that attorney work product is not within the ambit of the statutory waiver set forth in section 16–8–103.6, which governs waiver of privileged communications. We further hold that when a defendant asserts a claim of attorney work product privilege, the trial court should conduct an examination, in chambers or through an in camera

proceeding as contemplated by Crim. P. 16(III)(e) and (f), respectively, to determine which portions of the disputed materials, if any, should be excised. Finally, we hold that, based on this record, Ullery abandoned his right to pursue his objection on appeal when he failed to make a sufficient record that permits our review. Accordingly, we affirm in part and reverse in part the judgment of the court of appeals. We remand this case to the court of appeals with directions that it consider the other issues raised by Ullery's appeal that were not addressed by that court.