Johnetta N. MURRAY, Plaintiff,

v.

THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Carmen Russo, Leonard Wolff, and Martin Weisel, Defendants.

No. 91 Civ. 6950(PKL).

United States District Court,
S.D. New York.

March 15, 2001.

Matthew Leish, Davis Wright Tremaine, LLP, New York, NY, for Plaintiff.

Pat Miller, Corporation Counsel of the City of New York, NY, NY, for Defendants.

## MEMORANDUM ORDER

LEISURE, District Judge.

Plaintiff Johnetta Murray, a black Hispanic woman, brought this suit against the Board of Education of the City of New York, Carmen Russo, Leonard Wolff, and Martin Weisel (hereinafter, collectively, "defendants"), claiming that defendants discriminated against her on the basis of her race, gender, and national origin. Plaintiff specifically complains of violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1983. This action is scheduled to be tried by jury beginning March 26, 2001.

During discovery, plaintiff produced redacted notes from her treating psychiatrist, claiming attorney-client privilege. For example, the psychiatrist's notes dated September 2, 1992, begin, "All about court case, was quite pissed that judge consented to jury trial;" but, plaintiff redacted the following line, claiming attorney-client privilege. Defendants now move this Court to order plaintiff to produce un-redacted psychiatrist notes.

The Court notes its displeasure with the fact that although the redacted records in question were produced nearly two years ago, defendants seek production of the un-redacted records only weeks before trial and well after discovery has closed. However, defendants' contention has merit, and the Court will grant defendants' request.

## DISCUSSION

Plaintiff redacted portions of the notes produced by her psychiatrist, claiming that the redacted portions contained material that is protected by the attorney-client privilege. Defendants claim that plaintiff waived the attorney-client privilege when she disclosed the privileged communication to her psychiatrist and when she put her emotional health in issue.

This situation raises two distinct questions. First, did plaintiff waive the attorney-client privilege when she disclosed the privileged communications to her treating psychiatrist? Second, even if she did not waive the attorney-client privilege at the point of disclosure to the psychiatrist, does the attorney-client privilege survive once the psychiatrist-patient privilege is waived?

1. *Initial Disclosure to Psychiatrist Did Not Waive the Attorney–Client Privilege*

Under Federal Rule of Evidence 501, privilege questions in a federal action are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." F.R.E. 501. The attorney-client privilege attaches to confidential communications between attorney and client where legal advice is sought by the client, unless the client waives the privilege. *See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983 Marc Rich & Co. A.G v. United States,* 731 F.2d 1032, 1036 (2d Cir.1984). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395–96, 101 S.Ct. 677. Defendants do not dispute that plaintiff's original communications with her attorney were protected by the attorney-client privilege.

Defendants claim that plaintiff waived the attorney-client privilege when she disclosed the privileged communications to her psychiatrist. However, disclosure of communications protected by the attorney-client privilege within the context of another privilege does not constitute waiver of the attorney-client privilege. *See Solomon v. Scientific American, Inc.,* 125 F.R.D. 34, 36 (S.D.N.Y.1988) (holding that disclosure of communications protected by the attorney-client privilege within the context of the marital privilege does not constitute waiver of the attorney-client privilege); *see also* Weinstein's Federal Evidence, § 511–07 ("There is no waiver when the disclosure is made in

another communication that is itself privileged. For example, a person does not waive the lawyer-client privilege by telling a psychotherapist in confidence what the person told the lawyer."). Therefore, plaintiff did not waive the attorney-client privilege when she disclosed the privileged communications to her psychiatrist.

### 2. Attorney–Client Privilege Does Not Survive

■ The question of whether the attorney-client privilege survives for the redacted portions of the psychiatrist notes once plaintiff waived the psychiatrist-patient privilege is a more knotty problem. Plaintiff put her mental condition "in issue" when she claimed damages for emotional distress in this action and therefore waived the psychiatrist-patient privilege for the psychiatrist's notes that are relevant to the time and subject matter of this action. Sidor v. Reno, 1998 WL 164823, *2–3 (S.D.N.Y.1998); see also Kerman v. City of New York, 1997 WL 666261, *3–4 (S.D.N.Y.1997).

■ Some federal courts have held that putting a criminal defendant's mental health in issue by asserting the insanity defense does not waive the attorney-client privilege with respect to psychiatric consultations with "a psychiatric expert whom he hires to advise him with respect to the defendant's mental condition." United States v. Alvarez, 519 F.2d 1036, 1046–47 (3d Cir.1975) (ordering new trial where psychiatric expert whom defendant's attorney hired to advise him on defendant's mental state was forced to testify) (discussed in United States ex rel. Edney v. Smith, 425 F.Supp. 1038, 1048 & 1053 (E.D.N.Y.1976) (dismissing petition for writ of habeas corpus and holding that although it is probably preferable to protect psychotherapist-patient communications under the attorney-client privilege where psychiatrist examined patient at the request of patient's attorney to assist in trial preparation, such protection is not constitutionally mandated)).

Similarly, the Second Circuit has held that "the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer [does not] destroy the privi-

lege." United States v. Kovel, 296 F.2d 918, 922 (2d Cir.1961). The rationale for the Second Circuit's extension of the attorney-client privilege to communication to a non-lawyer accountant by the lawyer's client was

> the resultant of two conflicting forces. One is the general teaching that [t]he investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. The other is the more particular lesson [t]hat as, by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional [persons], it is absolutely necessary that a [person] should have recourse to the assistance of professional lawyers, and it is equally necessary that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret.

Id. at 921 (internal quotations and citations omitted). The Court then concluded that "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Id. at 922.

■ As Judge Weinstein similarly explained, "[t]he extent to which the privilege includes communications to a non-lawyer by the lawyer's client is determined by balancing two competing factors: 1) The need of the attorney for the assistance of the non-lawyer in effectively representing the client, and 2) The increased potential for inaccuracy in the truth-finding process as the trier of fact is deprived of valuable witnesses." Edney, 425 F.Supp. at 1046.

Here, there is no indication that plaintiff met with the psychiatrist at the direction of her attorney for the purpose of the attorney's preparation for trial. Rather, plaintiff sought treatment from the psychiatrist on her own behalf, and has since produced the psychiatrist's notes as part of discovery. Therefore, the considerations that would lead the Court to protect the notes do not apply here, and the Court declines to strain the attorney-client privilege to apply to a third

party who is not consulted to assist the attorney.[1]  Therefore, plaintiff must produce the psychiatrist's notes without the redactions.

### CONCLUSION

For the foregoing reasons, defendants' motion is granted, and plaintiff is ordered to produce an un-redacted version of the psychiatrist's notes in issue on or before March 20, 2001.

**SO ORDERED.**

---

1. Plaintiff relied upon *People v. Ullery,* 984 P.2d 586 (Colo.1999) to support her position, but her reliance is misplaced.  Quite to the contrary of plaintiff's position, in *People v. Ullery,* the Supreme Court of Colorado ruled *en banc* that "when a defendant asserts the affirmative defense of impaired mental condition, he 'waives his right to claim the attorney-client and physician-patient privileges,'... [but] waiver of a defendant's attorney-client privilege [does not] extend to a waiver of attorney work product."  984 P.2d at 589–90 (quoting *Gray v. District Court of the Eleventh Judicial District,* 884 P.2d 286, 289–91 (Colo.1994) (holding that the statutory attorney-client privilege in Colorado does not extend to communication between a defendant and the psychologist once the defendant asserted mental condition as a plea or defense, even when the psychologist evaluated the defendant at the request of the defendant's lawyer)).