Court of Appeals No. 13CA2155
Arapahoe County District Court No. 12CR1224 Honorable Marilyn Leonard Antrim, Judge
The People of the State of Colorado, Plaintiff-Appellee,
v.
Nicholas Javier Zapata, Defendant-Appellant.
JUDGMENT AFFIRMED
Division III
Opinion by JUDGE J. JONES 
Webb and Booras, JJ., concur
Announced May 19, 2016
Cynthia H. Coffman, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
 
¶ 1       Defendant, Nicholas Javier Zapata, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted second degree murder and first degree assault. We affirm.
Background
¶ 2       Defendant’s ex-girlfriend told him that she had been sexually 
harassed by the owner of the convenience store where she worked in Littleton. She also told defendant that the store owner had touched her crotch, buttocks, and breasts. However, she did not tell defendant everything that had happened because she “was worried about any actions that [defendant] would take.” Nevertheless, defendant was “mad” and “upset” about what she had told him.
¶ 3       One evening, defendant sent her text messages telling her, 
“Don’t be there.” Approximately thirty minutes later, defendant and Jose Murillo walked into the convenience store. Defendant and Mr. Murillo had known each other for six months. The evidence indicated that defendant and Mr. Murillo had taken the light rail together from downtown Denver to Littleton, and then they walked together from the light rail station to the convenience store.
¶ 4        Mr. Murillo quickly walked behind the counter and stabbed the store owner’s son with a knife. The prosecution’s theory was that defendant and Mr. Murillo mistakenly believed that the person behind the counter was the store owner who had sexually harassed and assaulted defendant’s ex-girlfriend.
¶ 5        A struggle ensued between Mr. Murillo and the store owner’s son. Defendant, who was the only other person in the store, watched the struggle from the other side of the counter. On the high-quality surveillance video, someone can be heard saying, “Get him, get him, get him good.” When the store owner’s son began hitting Mr. Murillo in the head with a hammer, Mr. Murillo said, “[H]elp me.” Defendant quickly left the store and fled. Mr. Murillo suffered permanent brain damage from the fight.
¶ 6        The People charged defendant with conspiracy to commit first  degree murder, attempted first degree murder, and first degree assault. The People charged Mr. Murillo in a separate case.
¶ 7        Mr. Murillo pleaded guilty in his case and testified at 
defendant’s trial. He testified that because of his brain damage, he did not remember the convenience store attack. But he also testified that he had known defendant for six months before the attack; the convenience store surveillance video showed him and defendant; they were not there to rob the store; and he was testifying because defendant had left him at the store to die.
¶ 8        The defense theory at trial, and what defendant told detectives 
during pretrial interviews, was that defendant went to the convenience store hoping to see his ex-girlfriend, and that he did not know that Mr. Murillo was going to attack the person behind the counter. The defense also emphasized that Mr. Murillo regularly used heroin at that time.
¶ 9        The jury found defendant guilty of attempted second degree murder and first degree assault.
¶ 10 On appeal, defendant contends that the district court erred by (1) not requiring the prosecution to disclose statements Mr. Murillo allegedly made during competency evaluations in his separate case; and (2) admitting evidence, as res gestae, of defendant’s prior controlling and threatening behavior toward his ex-girlfriend, her new boyfriend, and her mother.
Competency Report
¶ 11      We first address defendant’s contention that the district court  erred by not requiring the prosecution to disclose statements Mr. Murillo allegedly made during competency evaluations in his separate case. Defendant alternatively argues that the district court erred by failing to review the competency evaluations in camera before making its decision.
Further Background
¶ 12      In the case against Mr. Murillo, Mr. Murillo’s counsel raised 
the issue of Mr. Murillo’s competency, and two competency evaluations were completed.
¶ 13      In this case, at a pretrial hearing, defendant’s counsel 
requested that the prosecution produce any statements Mr. Murillo may have made during a competency evaluation about the underlying facts of the case. The court said that defendant was entitled to exculpatory and inculpatory information, but not any findings about medical issues. The prosecutor said that the People would be willing to produce the competency evaluation with redactions, but that “essentially what he says is he doesn’t remember anything about the incident.”
¶ 14 Later, Mr. Murillo withdrew his claim of incompetency in his case.
¶ 15 At a subsequent hearing in this case, defendant’s counsel told the court that the prosecution had still not produced the competency evaluations. Defendant’s counsel also told the court that Mr. Murillo had made a proffer in his case making statements about his involvement in this case. Another hearing was set for Mr. Murillo’s counsel to be present.
¶ 16 At that hearing (held on the same day that Mr. Murillo entered a guilty plea in his case), defendant’s counsel argued that the competency evaluations must be produced pursuant to section 16­8.5-104, C.R.S. 2015; Crim. P. 16; and Brady v. Maryland, 373 U.S. 83 (1963). Mr. Murillo’s counsel objected, arguing that Mr. Murillo had not waived his “privilege” as it related to defendant’s case, and that Mr. Murillo had already withdrawn his incompetency claim in his case. The prosecutor agreed with Mr. Murillo’s counsel that the competency evaluations should not be discoverable and added, “Your Honor, I can tell the Court as an officer of the court there is, I think, maybe two lines about the actual incident in this competency evaluation, and there is nothing in the competency evaluation that is not in the proffer that we’ve already discovered anyway.”
¶ 17 The court denied defendant’s request for production of the competency evaluations, explaining, First of all, the statute does not anticipate a codefendant in a separate case having access to this report. Second, I just took a plea from [Mr. Murillo] in which he indicated he was competent. . . . And he previously has withdrawn any defense he had that he was not competent as a result [of] . . . what happened to him during the incident. . . . I’m going to find this is not Brady material.
¶ 18 Defense counsel then requested that the court conduct an in camera review of the competency evaluations to determine whether Mr. Murillo had made any inconsistent statements that might implicate defendant’s confrontation rights. The court also denied that request, explaining,
This statute was enacted because people have a right to privilege to things they say to a physician or a psychologist or psychiatrist; therefore, there needs to be a law to waive. And that’s the privilege. And it’s inviolate. I think there’s case law that says it’s inviolate. There would then have to be a statute which would require the waiver of that inviolate right for certain purposes, and they’re set out. Those purposes are for a plea agreement or for trial, and they’re available to the defense, to the prosecution. And I don’t see anything here that would add . . . any other person who may find this information important. It just isn’t here. So I’m denying your request based on the plain reading of the statute.
¶ 19  Defendant’s counsel later filed a motion for reconsideration, to which he attached Mr. Murillo’s proffer in the other case. Defendant’s counsel also brought up the issue again on the first day of trial. The court again denied the request.
Standards of Review
¶ 20 We review for an abuse of discretion a district court’s resolution of discovery issues, including whether to conduct an in camera review of documents sought in discovery. See People v. Herrera, 2012 COA 13, ¶ 10. A court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. Id. at ¶ 11.
¶ 21 We review de novo issues of statutory interpretation. Hunsaker v. People, 2015 CO 46, ¶ 11. We also review de novo the application of the psychologist-patient privilege. See People v. Kailey, 2014 CO 50, ¶ 12.
Analysis
¶ 22 Defendant’s contentions implicate the proper interpretation of section 16-8.5-104 — relating to the waiver of privilege surrounding a competency evaluation — and section 16-8.5-108, C.R.S. 2015 — relating to the admissibility of evidence obtained during a competency evaluation.
¶ 23      Section 16-8.5-104, entitled “Waiver of privilege,” provides that 
when a defendant raises the issue of his competency, “any claim by the defendant to confidentiality or privilege is deemed waived, and the district attorney, the defense attorney, and the court are granted access” to the competency evaluation reports. § 16-8.5­104(1). It also provides that “[s]tatements made by the defendant in the course of any evaluation shall be protected as provided in section 16-8.5-108.” § 16-8.5-104(6).
¶ 24      Section 16-8.5-108, in turn, entitled “Evidence,” discusses the 
limited circumstances of admissibility of “evidence acquired directly or indirectly for the first time from a communication derived from the defendant’s mental processes during the course of a competency evaluation.” § 16-8.5-108(1)(a); see also § 16-8.5­108(1)(b), (1)(c), (2).
¶ 25 Defendant’s arguments on appeal concerning these provisions fall into three categories: first, that Mr. Murillo did not have a valid privilege protecting these communications; second, even if he did, he waived any such privilege; and third, any such privilege must give way to defendant’s right to discovery under Crim. P. 16 and his constitutional rights to confrontation and due process.
¶ 26 In terms of defendant’s argument that Mr. Murillo did not have a valid psychologist-patient privilege concerning the communications at issue, we note that defendant did not raise that argument in his opening brief; instead, he did so for the first time in his reply brief. We ordinarily will not consider such an argument. See People v. Czemerynski, 786 P.2d 1100, 1107 (Colo. 1990) issues not raised in an appellant’s opening brief will normally not be considered on appeal).
¶ 27 Regardless, we reject the argument. Defendant argues that the statutory reference to “confidentiality or privilege” does not necessarily refer specifically to the psychologist-patient privilege. But under the statute, competency evaluations can only be conducted by a licensed physician who is a psychiatrist or psychologist, both of whom are subject to the psychologist-patient privilege. See § 16-8.5-101(2), C.R.S. 2015; see also § 16-8.5­101(1), (5), (14); § 13-90-107(1)(g), C.R.S. 2015. Further, the supreme court has made clear that the “confidentiality or privilege” referred to in the former version of section 16-8-103.6 (which at that time included the “confidentiality or privilege” surrounding competency evaluations) is indeed the psychologist-patient privilege. See Hendricks v. People, 10 P.3d 1231, 1242 (Colo. 2000) (section 16-8-103.6 involves the waiver of the “physician-patient privilege”); People v. Ullery, 984 P.2d 586, 589-90 (Colo. 1999) (section 16-8-103.6 pertains to the “physician/psychologist-patient privileges”) (citation omitted); see also People v. Steen, 2014 CO 9, ¶ 9 (“We will read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts.”); People v. Cunefare, 102 P.3d 302, 306 (Colo. 2004) (“Because the language of [another] statute is substantially similar to the language we interpret in this case, we hold that the same principles apply here.”).[1]
1 Before 2008, section 16-8-103.6, C.R.S. 2015, pertained to the waiver of “confidentiality or privilege” surrounding mental health evaluations to determine either competency or insanity. In 2008, the General Assembly relocated the provisions concerning waiver of privilege surrounding competency evaluations to section 16-8.5­104, C.R.S. 2015. See Ch. 389, secs. 2 & 3, §§ 16-8-103.6, 16-8.5­104, 2008 Colo. Sess. Laws 1841-42, 1850-51; see also People in Interest of W.P., 2013 CO 11, ¶ 15 (discussing statutory amendment). The current version of section 16-8.5-104 contains the same reference to “confidentiality or privilege,” and we hold that
¶ 28 We also disagree with defendant’s argument that Mr. Murillo waived his psychologist-patient privilege concerning the statements he made during the competency evaluations for purposes of defendant’s case. The plain language of section 16-8.5-104 indicates that such otherwise privileged communications would only be discoverable in Mr. Murillo’s case, not defendant’s case. See, e.g., § 16-8.5-104(1) (after a defendant raises the issue of his competency to proceed, the privilege is waived and the competency report shall be disclosed to “the district attorney, the defense attorney, and the court”); § 16-8.5-104(2) (“either party or the court” can request the information); § 16-8.5-104(4) (the court may order additional information be provided to “either party to the case”); see also Gray v. Dist. Court, 884 P.2d 286, 292-93 (Colo. 1994) (discussing waiver of psychologist-patient privilege where a defendant tenders his mental condition as an issue in a criminal case).
¶ 29      Further, the plain language of section 16-8.5-108 indicates that any such communications would be admissible only in Mr. it also refers to the psychologist-patient privilege, just as the former version of 16-8-103.6 did. Murillo’s case, not in defendant’s case. Again, significantly, section 16-8.5-104(6) provides that “[s]tatements made by the defendant in the course of [a competency evaluation] shall be protected as provided in section 16-8.5-108.” Section 16-8.5-108 details the limited circumstances in which such statements are admissible and not “protected.” The provisions in section 16-8.5-108 would only apply to the case brought against Mr. Murillo, not the case brought against defendant. See, e.g., § 16-8.5-108(1)(a) (such evidence may be admissible at trial to rebut evidence introduced by the defendant of the defendant’s mental condition to show incapacity of the defendant to form a culpable mental state); § 16-8.5-108(1)(c) (if a defendant testifies on his or her own behalf, such evidence may be used to impeach or rebut the defendant’s testimony). Section 16­8.5-108(1)(c) clearly does not apply to defendant’s attempts to impeach Mr. Murillo’s testimony at defendant’s trial.
¶ 30 Finally, we are unpersuaded by defendant’s argument that his rights to disclosure under Crim. P. 16 and his constitutional rights to confrontation and due process trump Mr. Murillo’s claim of privilege. Where the psychologist-patient privilege protects a witness’s statements, and where the privilege has not been waived, a defendant is (at least generally) not entitled to discovery or an in camera review of the privileged statements. See, e.g., People v. Wittrein, 221 P.3d 1076, 1083 (Colo. 2009); People v. Sisneros, 55 P.3d 797, 800 (Colo. 2002); Dill v. People, 927 P.2d 1315, 1322-25 (Colo. 1996); People v. Dist. Court, 719 P.2d 722, 726-27 (Colo. 1986). To the extent that rule is not absolute, defendant made no particularized showing that the statements Mr. Murillo allegedly made during the competency evaluations somehow exculpated defendant, or were inconsistent with the information in Mr. Murillo’s proffer. See Wittrein, 221 P.3d at 1088 (Martinez, J., concurring in judgment only) (“[W]ithout eliminating the possibility that there may be times when the due process clause requires that the trial court conduct an in camera review of privileged records to determine whether they contain information that must be disclosed to the defense, in the absence of a particularized showing that the records contain exculpatory information not otherwise available to the defendant, in camera review is not required.”).
¶ 31     The district court did not err in ruling that the psychologist-patient privilege applied to statements Mr. Murillo made during his competency evaluations, and that Mr. Murillo did not waive his privilege under section 16-8.5-104 for purposes of discovery in defendant’s case. Further, the district court did not abuse its discretion in denying the requested discovery and in declining to review the competency reports in camera.
III. Res Gestae
¶ 32 Defendant also contends that the district court erred by admitting evidence, as res gestae, of his prior controlling and threatening behavior toward his ex-girlfriend, her new boyfriend, and her mother. We need not decide whether the court erred, however, because any error in admitting the evidence was harmless.
Further Background
¶ 33      Before trial, the prosecution filed a notice of intent to 
introduce prior acts of defendant as res gestae evidence, or in the alternative as CRE 404(b) evidence. The notice and its attachments, as well as the prosecutor’s argument at a hearing, reflected that the prosecution sought to admit evidence of defendant’s jealous, controlling, and obsessive behaviors toward the ex-girlfriend. The evidence included text messages that defendant had sent to the ex-girlfriend a week before the convenience store attack, in which he threatened her, her new boyfriend, and her mother. The prosecutor later told the district court that the prosecution also intended to introduce evidence that defendant and his ex-girlfriend had gotten into physical fights within the six months before the convenience store attack.
¶ 34  Over defense counsel’s objections, the district court ruled that  the evidence would be admissible as res gestae.
¶ 35 At trial, the ex-girlfriend testified that she had ended her relationship with defendant because of his controlling behavior. He needed to know where she was at all times. They would argue and physically fight when she talked to other men. When she ended the relationship, he began threatening her, her new boyfriend, and her mother. The text messages containing such threats, which defendant sent her the week before the convenience store attack, were admitted at trial.
¶ 36 The prosecutor also discussed that evidence during closing argument, and told the jury, “[Y]ou know . . . his anger, his possessiveness, his controlling. . . . Prior to the [attack at the convenience store] you know how he reacts to and what he thinks about people who are messing with [his ex-girlfriend]. And what he would like to do to them.”
Standards of Review
¶ 37 We review a district court’s ruling admitting evidence as res gestae for an abuse of discretion. People v. Reed, 2013 COA 113, ¶ 31.
¶ 38 When, as here, a defendant has preserved an objection to the admission of evidence, we review for harmless error. See Yusem v. People, 210 P.3d 458, 469 (Colo. 2009); Reed, ¶ 32. (We disagree with defendant’s suggestion that we should review for constitutional harmless error. See Yusem, 210 P.3d at 469 & n.16; Reed, ¶ 32.) The proper inquiry in determining a harmless error question is not whether there wassufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless. Yusem, 210 P.3d at 469 (quoting People v. Gaffney, 769 P.2d 1081, 1088 (Colo. 1989)). “Put differently, [a defendant] is entitled to reversal if there is ‘a reasonable probability that the error contributed to [his] conviction.’” Id. (quoting in part People v. Garcia, 28 P.3d 340, 344 (Colo. 2001)).
Analysis
¶ 39 We need not resolve the question whether the district court abused its discretion in admitting the aforementioned evidence as res gestae because any such error was harmless. Defendant did not dispute that he walked into the convenience store with Mr. Murillo and watched the attack from the other side of the counter. The case turned on whether the jury believed the prosecution’s theory that defendant had enlisted Mr. Murillo to attack the store owner, or instead believed defendant’s theory that he was a mere bystander who witnessed the attack.
¶ 40 On the one hand, the evidence supporting the prosecution’s theory was compelling: defendant learned of the store owner’s sexual harassment of and assaults on his ex-girlfriend; defendant was angry and upset about it; defendant texted his ex-girlfriend thirty minutes before the attack telling her, “Don’t be there”; during the attack, Mr. Murillo said, “[H]elp me”; and the evidence strongly indicates that it was defendant who said during the attack, “Get him, get him, get him good.”
¶ 41 On the other hand, the defense theory was weak, given that defendant had traveled with Mr. Murillo from downtown Denver to Littleton and that they had then walked to the convenience store together; Mr. Murillo had never been to Littleton before and did not know anyone who worked at the convenience store; and no evidence indicated that Mr. Murillo had some other motivation to attack the store clerk.
¶ 42 In sum, although the evidence of defendant’s prior controlling and threatening behavior may have impugned his character to a degree, we conclude that the error in admitting that evidence did not substantially influence the verdict or impair the fairness of the trial. See Yusem, 210 P.3d at 469.

 Conclusion

¶ 43 The judgment is affirmed.
JUDGE WEBB and JUDGE BOORAS concur.